George **GOEHRING**

v.

**UNITED STATES of America, et al.**

**Civ. No. JFM–93–4171.**

United States District Court,
D. Maryland.

Dec. 7, 1994.

Charles G. Bernstein, Bernstein, Sakellaris & Ward, Baltimore, MD, for plaintiff.

Jeanette Plante, Asst. U.S. Atty., Baltimore, MD, for defendant.

## MEMORANDUM

MOTZ, District Judge.

On February 13, 1992 plaintiff, George Goehring, was shot in the hand by United States Postal Inspector Mark Carr during the course of a raid on his home. He has filed this suit against Carr and the United States of America, asserting claims against the United States under the Federal Tort Claims Act for assault and battery and negligent planning and execution of a search warrant and against Carr under *Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Defendants have filed a motion to dismiss or for summary judgment.

### I.

On or about February 5, 1992, United States Customs agents at the Dulles Airport Airmail Facility intercepted two overseas parcels from Amsterdam, Holland.[1] The parcels were addressed to "Johnny Gay," 3407 Lake Montebello Drive, Baltimore, Maryland, 21218—plaintiff's home. The parcels contained approximately four ounces of hashish. The United States Attorney's Office for the District of Maryland declined to prosecute. The agents did, however, succeed in having a federal search warrant issued, contemplating that any prosecution would be in state court.

On the afternoon of February 13, 1992, the agents met to plan the execution of the warrant. During the meeting various matters were discussed, including the facts that (1) the residence at which the search was to be conducted was occupied by two men, plaintiff and Dennis O'Brien, (2) the two owned an antique shop and (3) they did not have criminal records. Their residence was a two-story row house in what Carr described on deposition as a nice neighborhood.

At approximately 5:00 p.m. the two parcels (together with other mail) were delivered to

---

1. This statement of facts either states facts that are undisputed, resolves disputed facts in favor of plaintiff (the non-moving party) or recites the parties' different versions of certain events.

plaintiff's home. The surveillance team observed plaintiff accepting the parcels and, soon thereafter, another man entering the residence through the front door. The surveillance team radioed the information concerning their observations to the search team. The search team then approached the house.

Carr has testified on deposition that he knocked twice and announced "police." Plaintiff denies that he heard any knock or any announcement. In any event, Carr admits that within seconds he used a battering ram on the front door which shattered the pane of glass in the door rather than the lock. Carr and approximately eight federal agents and local police officers rushed into the house. They were wearing jackets or vests identifying themselves as law enforcement officials.

Carr ran into the middle room of the house, a room that the parties have described as the "piano room" because it contained a piano in it. Carr saw plaintiff standing approximately ten feet in front of him in the kitchen behind a 36½" counter. According to Carr, he could not see plaintiff's hands. Although Carr acknowledges that he may have hollered "freeze" or "get down" when he entered the house, he has testified that he ordered plaintiff to raise his hands after confronting him. Plaintiff has testified that he was receiving conflicting instructions from various agents as to what to do and that he was terrified by what was occurring. In any event, plaintiff did not immediately raise his hands but stared blankly at Carr. He then ducked down behind the counter.

Carr has testified that he heard some kind of noise while plaintiff was behind the counter. Plaintiff denies that he did anything to cause any noise or that any noise was made. At this point Carr made up his mind that plaintiff was going for a gun and that he would shoot at plaintiff as soon as plaintiff arose. For his part, plaintiff decided to raise his hands in surrender. He put them above the counter, palms outstretched toward Carr. According to Carr's testimony, he fired his

weapon at the "center of the mass." A .38 caliber bullet went through plaintiff's forearm, four inches below the wrist and exited his forearm. The injury resulted in plaintiff having to undergo two hip graft surgeries.

## II.

■ Plaintiff's claims under the Federal Tort Claims Act (FTCA) fail. Maryland law applies to those claims and under Maryland law, a law enforcement officer is not liable for assault and battery or other tortious conduct performed during the course of his official duties unless he acted with actual malice toward the plaintiff, i.e. with "ill will, improper motivation or evil purpose." *See, e.g., Davis v. Muse,* 51 Md.App. 93, 100, 441 A.2d 1089, 1093 (1982). The record does not contain any facts from which a jury could infer that Carr (or any other agents) acted with such malice here.[2]

■ As to plaintiff's *Bivens* claim, Carr is entitled to the federal defense of "qualified immunity," i.e. he is shielded from liability to the extent that his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The defense is available in excessive force cases as it is in other civil rights actions. *See Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991). The Fourth Circuit has recently stated that "[t]he inquiry on qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances.... This test is not rigid or mechanical but depends on the 'facts and circumstances of each particular case.'" *Rowland v. Perry,* 41 F.3d 167, 173 (4th Cir., 1994), (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989)).

Here, it cannot be said that viewing the facts most favorably to plaintiff, a reasonable officer standing in the shoes of Carr could have believed that shooting plaintiff was ob-

---

**2.** Defendants are also entitled to all federal defenses, including federal qualified immunity, on plaintiff's FTCA claims. *See* 28 U.S.C. § 2674. However, for the reasons stated *infra,* the record does not support their summary judgment motion on that defense.

jectively reasonable in light of the circumstances. To begin with, the crime leading to the search of plaintiff's home was a relatively minor one, not of the type that would lead a reasonable officer to believe that it was likely that the alleged wrongdoer would resist arrest by use of a firearm.[3] Moreover, the agents who conducted the raid knew that plaintiff was not a hardened criminal but, to the contrary, an antique dealer without any prior criminal record. After using a battering ram to break through the door within (viewing the evidence most favorably to Carr) only seconds after having knocked, the agents found not an arms cache but a piano standing in the middle of a room. Beyond it Carr observed plaintiff standing at his kitchen counter.

Knowing that he had helped create what an antique dealer may have reasonably perceived as terrifying circumstances, Carr then saw plaintiff staring blankly and eventually dropping to his knees behind the counter. According to Carr, at that very moment he decided that plaintiff was reaching for a gun and decided to shoot at him as soon as any part of his body emerged above the counter. Fortunately, plaintiff raised his hands instead of his head. Empty and with palms outstretched, the hands became Carr's target.

To state these facts is to negate the proffered defense. Defendants' theory seems to be that Carr's actions were entirely reasonable simply because plaintiff could have been reaching for a gun. That contention proves too much: all things are possible and if mere possibility is all that is required to establish a qualified immunity defense, law enforcement officials would have virtually unlimited license to use deadly force against meek and vulnerable victims. Moreover, on the record in this case, even the possibility that Carr imagines was contradicted by the reality of that which he should have reasonably observed as plaintiff lifted his empty hands in the air from behind the counter.

Defendants point out that within recent years the Fourth Circuit has not been reluctant to apply the qualified immunity defense in deadly force cases. *See, e.g., Slattery v. Rizzo, supra; McLenagan v. Karnes,* 27 F.3d 1002 (4th Cir.1994). However, to hold that the qualified immunity doctrine is capable of application in deadly force cases is not to say that it is appropriately applied in every such case. Any person (perhaps particularly one with any law enforcement experience) who has any sense of decency and any common sense knows that, viewing the evidence here most favorably to plaintiff, what happened was fundamentally wrong. To grant summary judgment to defendants would be to turn one of the most venerable of maxims upon its head. No longer would it be said that "the Government wins whenever justice is done;" rather we would be reduced to proclaiming that "justice is done whenever the Government wins."

Nothing is more illiberal or more offensive to true conservative principles than the doctrine that the State is paramount and that abuses of sovereign power are beyond redress. That doctrine is not embedded in the law of this or any other circuit. Carr's motion for summary judgment will therefore be denied.

### ORDER

For the reasons stated in the memorandum entered herewith, it is this 7th day of December 1994

ORDERED

1. The motion for summary judgment filed by the United States of America is granted; and

2. The motion for summary judgment filed by defendant Carr is denied.

---

**3.** As noted above, the United States Attorney's Office reflected its view of the severity of the offense by declining prosecution. Ultimately, plaintiff pled guilty to a misdemeanor charge of simple possession of hashish in the District Court of Maryland for Baltimore City. He received probation before judgment.