655 A.2d 401

Wayne Nelson DAVIS

v.

Bernadette DIPINO et al.

No. 53, Sept. Term, 1994.

Court of Appeals of Maryland.

March 13, 1995.

Reconsideration Denied April 7, 1995.

Peter Ayers Wimbrow, III, Ocean City, for petitioner.

Guy R. Ayres, III, Ayres, Jenkins, Gordy & Almand, P.A., Ocean City, Carmen M. Shepard, Asst. Atty. Gen. (Julia M. Freit, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen., all on brief), Baltimore, for respondents.

Charles S. Fax, Gregory M. Miller, Dana M.S. Wilson, Shapiro and Olander, Baltimore, amicus curiae, for Local Government Ins. Trust.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

We are called upon in this case to determine whether an appellate court reviewing a trial court's grant of summary judgment may, after ruling that summary judgment was improperly granted, nevertheless affirm a trial court's judgment based on the plaintiff's failure to plead any claim upon which relief can be granted even though the defendants never argued that the complaint was defective. For the reasons set forth below, we hold that an appellate court should not undertake to review whether a plaintiff failed to state a claim upon which relief can be granted when the only motion filed and the only motion on appeal was the trial court's grant of summary judgment.

I.

This case arises out of an action filed by Wayne Nelson Davis (Davis) against Ocean City police officer Bernadette DiPino (DiPino), the Mayor and City Council of Ocean City (Ocean City), and District Court Commissioner Donald E. Turner (Turner). Davis filed a nine-count complaint in the Circuit Court for Worcester County seeking money damages from DiPino and Ocean City, and also requesting injunctive and declaratory relief against Turner based in part on Davis's arrest on a warrant obtained by DiPino and issued by Turner. Count I alleged that DiPino violated Davis's rights under the First, Fourth, Fifth, Sixth and Eighth Amendments to the United States Constitution as protected by 42 U.S.C. § 1983. Count II alleged that DiPino and Ocean City violated Davis's rights under Articles 21, 24, 25, 26 and 40 of the Maryland Declaration of Rights. Counts III through VI contained counts against DiPino and Ocean City for false arrest/imprisonment, malicious prosecution, abuse of process and intentional infliction of emotional distress. Count VII alleged that Ocean City violated 42 U.S.C. § 1983 for failing to "instruct, supervise, control and discipline [DiPino] on a continuing basis." Counts VIII and IX alleged that Turner and other similarly situated district court commissioners violated 42 U.S.C. § 1983 and Articles 24 and 26 of the Maryland Declaration of Rights by routinely issuing warrants without any finding of probable cause and routinely ignoring the requirements of Maryland Rule 4–212(d)(1) by issuing warrants instead of a criminal summons. The complaint sought injunctive and declaratory relief as well as attorney's fees.

Since we are called upon to consider whether Davis may be able to establish a cause of action against the defendants, we shall set forth the disputed facts contained in the pleadings, proffers and affidavits in the light most favorable to Davis's potential causes of action. Davis's complaint arose out of the following facts. On May 12, 1991, Davis was on Wicomico Street in Ocean City talking with a friend. When Davis saw DiPino and another detective, Alice Brumbley (Brumbley)

across the street getting into their vehicle, he said to his friend, "[t]hose are the two girls who tried to sell me some pot and were gonna bust me." His friend asked, "[w]hat are they, narcs?" Davis responded, "I don't know what they are." Davis stated that he did not know the two women were police officers and the women could not be identified as police officers because they were not in uniform. On July 5, 1991, nearly two months after Davis made these statements to his friend, DiPino made an application for statement of charges seeking the issuance of a summons or warrant for Davis's arrest. The application alleged that:

"[Davis] did knowingly and willfully advise an unknown white male as to the identity and occupation of [DiPino] and ... Alice N. Brumbley. [DiPino] and Brumbley were working in an undercover capacity on Wicomico St. Ocean City Worcester County Md. While entering a vehicle [DiPino] and Brumbley observed [Davis] state to an unknown white male 'Look those two girls are narcs.' Narcs being a derogatory street term for a narcotics officer. This statement was said in a loud enough voice as so the [detectives] approx[imately] 3 yds away could hear and any passerby could also hear placing the [detectives] in extreme danger and compromising their cover."

Although DiPino claimed that Davis's statement was loud enough to be heard approximately three yards away, Davis claimed that even DiPino could not hear what he was saying because she got it "garbled." Although DiPino claimed that Davis said "Look those two girls are narcs," Davis claimed that he never said that the two women were "narcs" because he did not even know they were police officers. Additionally, although DiPino claimed that the statement put her and Brumbley in "extreme danger" because bystanders could hear the statement, she never claimed that anyone actually heard the statement or that Davis directed his comment at anyone other than his friend.

DiPino presented the application for statement of charges to Turner who issued an arrest warrant, rather than a summons, as well as a statement of charges charging Davis with two counts of "obstructing and hindering." Davis was arrested at his place of employment instead of his home address which

was the address listed on the application, the warrant and the statement of charges. He was arrested and handcuffed in front of his co-employees and patrons of his employer on July 6th, during one of the busiest weekends of the year. After his arrest, Davis was brought before Turner who scheduled a trial date for October 2, 1991, refused to release Davis on personal recognizance, and set bond at $50,000. Davis remained in jail for two days after his arrest waiting until his friends could post a property bond on his behalf. When the case came up for trial, the state entered a *nolle prosequi* as to each charge.

After answering Davis's complaint, DiPino and Ocean City moved for summary judgment and attached a supporting affidavit of DiPino claiming that Davis's comment was an intentional effort to blow her cover and the comment obstructed and hindered her "ability to operate in an undercover capacity." She stated that Davis's statements were made in a louder than normal conversational tone and were "loud enough to be heard by the bouncer ... and all others in the vicinity" of an establishment where the bouncer was the subject of an undercover narcotics investigation. DiPino also stated that "at no time have I had any malicious intent or ill will against Wayne Davis."

Turner also filed a motion for summary judgment with supporting affidavit. In his affidavit, Turner stated that, contrary to Davis's assertion that he lacked any basis to issue an arrest warrant, rather than a summons, under Md. Rule 4–212(d)(1)(B), Turner had probable cause to believe that "there was a substantial likelihood that [Davis] may have disregarded a mere summons because the charges sought involved the compromising of a police cover."

Davis filed separate responses in opposition to the motions for summary judgment, along with a supporting affidavit. After hearing argument on defendants' motions for summary judgment and Davis's opposition thereto, the circuit court granted summary judgment in favor of all defendants. Davis appealed to the Court of Special Appeals which determined that the defendants "were not entitled to summary judgment on the basis of the affidavits filed by DiPino and Turner." *Davis v. DiPino,* 99 Md.App. 282, 289, 637 A.2d 475, 478

(1994). We agree with that determination. Nevertheless, the Court of Special Appeals held that "each count of [Davis's] complaint failed to state a claim upon which relief can be granted" and affirmed "the circuit court's decision to terminate the proceedings." *Id.* We granted certiorari in this case to consider whether the Court of Special Appeals properly dismissed Davis's complaint for failure to adequately plead any claim upon which relief can be granted. Other issues were presented in Davis's petition for certiorari, but based on our decision on the first issue we deem it unnecessary to reach the remaining issues.

## II.

■ Respondents argue that the Court of Special Appeals could properly affirm the circuit court's judgment in the instant case, even though it did so on the basis of Davis's failure to state a claim upon which relief could be granted, while the circuit court's judgment was based on the grant of defendant's summary judgment motion. We disagree.

The scope of appellate review is found in Md.Rule 8–131(a) which provides:

"Ordinarily, the appellate court will not decide any other issue [besides subject matter and personal jurisdiction] unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

*See also Moats v. City of Hagerstown,* 324 Md. 519, 524–25, 597 A.2d 972, 974–75 (1991); *Friedman v. Clark,* 252 Md. 26, 31, 248 A.2d 867, 870 (1969) (citing former Md.Rule 885, which stated that appellate courts "will not ordinarily decide any point or question which does not plainly appear by the record to have been tried *and* decided in the lower court") (emphasis added).

This Court has stated that the "primary purpose of Rule 8–131(a) is ' "to ensure fairness for all parties in a case and to promote the orderly administration of law." ' " *State v. Bell,* 334 Md. 178, 189, 638 A.2d 107, 113 (1994) (quoting *Brice v. State,* 254 Md. 655, 661, 255 A.2d 28, 31 (1969), in turn quoting

*Banks v. State,* 203 Md. 488, 495, 102 A.2d 267, 271 (1954)). Providing fairness to the parties may be accomplished by "requir[ing] counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings." *Clayman v. Prince George's Co.,* 266 Md. 409, 416, 292 A.2d 689, 693 (1972) (citation omitted). Additionally, we have stated that although Md.Rule 8–131(a) grants some discretion to an appellate court to consider issues raised for the first time on appeal, "[a] court should not ... exercise its discretion to consider an issue raised for the first time on appeal if to do so would unfairly prejudice the parties." *County Council v. Offen,* 334 Md. 499, 509–10, 639 A.2d 1070, 1075 (1994) (citing *Bell,* 334 Md. at 189, 638 A.2d at 113).

As discussed below, an appellate court that determines that summary judgment was improper but nonetheless proceeds to affirm a trial court's judgment because the complaint failed to state a claim upon which relief can be granted, even though that issue was not argued or decided at the trial level, acts beyond the scope of appellate review contemplated by Md. Rule 8–131(a). Initially, we note several distinctions between a motion to dismiss and a motion for summary judgment. First, the legal standards a court must consider for granting either a motion to dismiss or a motion for summary judgment are distinct. "Dismissal is proper only if the facts alleged fail to state a cause of action." *Decoster v. Westinghouse,* 333 Md. 245, 249, 634 A.2d 1330, 1332 (1994); *see also* Md.Rule 2–322(b)(2). On the other hand, a motion for summary judgment may be granted only if "there is no genuine dispute as to any material fact and ... the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(e); *see also Southland Corp. v. Griffith,* 332 Md. 704, 712, 633 A.2d 84, 87 (1993). Additionally, when a trial court grants a motion to dismiss for failure to state a claim upon which relief can be granted, the court has the discretionary authority to grant the plaintiff leave to amend the complaint to cure any defects. *See* Md.Rule 2–322(c). There is no such discretionary authority to permit the amendment of the

complaint subsequent to the grant of summary judgment. Furthermore, while the Maryland rules convert a motion to dismiss into a motion for summary judgment when a trial court considers matters outside the pleadings in reaching its decision, *see* Md.Rule 2–322(c), there is no Maryland rule which permits the conversion of a motion for summary judgment into a motion to dismiss.

The distinctions between a motion to dismiss and a motion for summary judgment demonstrate why it is unfair and prejudicial to a plaintiff for an appellate court to *sua sponte* grant a motion to dismiss at the appellate level when the motion on appeal is one for summary judgment. When an appellate court *sua sponte* dismisses a complaint, the plaintiff is never given the opportunity to seek leave to amend the complaint to cure any defects. Furthermore, because the arguments on appeal of a motion for summary judgment focus solely on whether there are any disputes as to material facts, these arguments are not likely to address whether the complaint failed to plead a claim upon which relief can be granted. Thus, the plaintiff is not given the opportunity to argue that the pleading adequately alleges or could be amended to allege a legally sufficient cause of action and that dismissal is therefore inappropriate.

The refusal to dismiss a case on the grounds that the complaint failed to state a cause of action when that issue was raised for the first time on appeal was discussed in *Perez v. Coast to Coast Reforestation Corp.,* 100 Or.App. 115, 785 P.2d 365 (1990). In *Perez,* the Court of Appeals of Oregon refused to dismiss a case based on a different ground for dismissal than that decided by the trial court. The trial court had dismissed the case on the grounds that Oregon statutes were inapplicable to the employment contracts at issue in the case. On appeal, the appellate court held that the Oregon statutes were applicable to the employment contracts. The respondents argued that the trial court's dismissal should nevertheless be affirmed on the alternative ground that the complaint "fail[ed] to state ultimate facts sufficient to constitute a claim

against [the defendant]." In rejecting respondents' request, the appellate court held that:

"We decline to affirm the dismissal of a case on pure pleading grounds, when only substantive legal reasons for dismissal were presented to the trial judge and when an amendment might cure the defect." (Citation omitted).

*Perez,* 785 P.2d at 366. Since the trial court did not determine whether the complaint stated a legally sufficient cause of action, the appellate court would not consider that argument for the first time on appeal.

Furthermore, our cases have consistently held that in appeals from either a motion for summary judgment or a motion to dismiss, an appellate court must focus on whether the trial court properly ruled on the motion before it. For example, in *Antigua Condominium v. Melba Investors,* 307 Md. 700, 517 A.2d 75 (1986), the defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted and the trial court granted that motion. On appeal, the Court of Special Appeals remanded certain claims to the trial court after concluding that the allegations in plaintiff's complaint may have stated a legally sufficient cause of action. On certiorari to this Court, the defendants argued that certain documents produced in discovery should be considered in ruling on defendant's motion to dismiss. We refused to consider those documents and noted that the discretion to treat a motion to dismiss as a motion for summary judgment and thereby consider matters outside the pleadings is committed to the trial court where the plaintiff is given "a reasonable opportunity to present ... additional pertinent material. We cannot exercise the discretions which are in the first instance committed to the trial court." *Antigua Condominium,* 307 Md. at 719, 517 A.2d at 85 (citation omitted). Thus, because the trial court did not convert the motion to dismiss into one for summary judgment by considering the discovery documents, we refused to consider those documents in determining whether plaintiff's complaint stated a legally sufficient cause of action. *Cf. Eisel v. Board of Education,* 324 Md. 376, 380, 597 A.2d 447, 449 (1991) (noting that "because judgment was

entered on summary judgment," the court may consider admissible facts from the record in determining whether the trial court's ruling was proper); *Shofer v. Hack Co.*, 324 Md. 92, 97, 595 A.2d 1078, 1080 (1991) (treating a motion to dismiss as a motion for summary judgment because the circuit court relied on discovery material and affidavits in ruling on the motion), *cert. denied,* 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992).

Similarly, in *Colman v. Utah State Land Bd.*, 795 P.2d 622 (Utah 1990), the Supreme Court of Utah refused to consider any evidence presented at a preliminary injunction hearing in determining whether the grant of a motion to dismiss for failure to state a claim upon which relief can be granted was proper. The court noted that although a motion to dismiss can be converted into a motion for summary judgment "it must only be done so as to not create procedural prejudice to one of the parties." *Colman,* 795 P.2d at 625. The court stated that "had [the plaintiff] known that the [defendant] would rely on the preliminary injunction evidence, he could have submitted other evidence to the trial court rebutting that evidence." *Id.* Given that this opportunity was not provided to the plaintiff, the appellate court refused to consider the evidence on appeal and confined its analysis solely to whether the complaint stated a legally sufficient cause of action. *Id.* If the trial court never decided whether the plaintiff failed to plead a claim upon which relief can be granted, an appellate court should not consider that issue.

Turning to the proceedings in the instant case, it is clear that Davis was prejudiced by the Court of Special Appeals's *sua sponte* determination that he failed to state a claim upon which relief can be granted. Examining the pleadings, proffers and affidavits in the instant case in the light most favorable to Davis, we find that Davis may have been able to sufficiently allege that DiPino acted with malice. Even if the complaint might not adequately plead malice, Davis should be given the opportunity to amend his complaint. The facts in the instant case disclose that on May 12, 1991, Davis stated to his friend that DiPino and Brumbley tried to sell him pot. He

claimed that, contrary to what DiPino stated in the application for statement of charges, he did not state that DiPino and Brumbley were "narcs." Davis also claimed that although DiPino stated that Davis's statement was loud enough to be heard approximately three yards away, it is doubtful that the statement could be heard from that distance because DiPino herself did not hear Davis's exact words. In fact, although DiPino claimed that she was concerned that the statement could be heard at the establishment under investigation, Davis claimed it was "inconceivable that ... DiPino was seriously worried" that the statement could be heard at the establishment because it was located on the other side of a fifty foot wide street. Additionally, although DiPino claimed in the application that the statement placed her and Brumbley in "extreme danger" and "compromis[ed] their cover" because the statement could be heard by "any passerby," she does not claim that any person heard the statement or that Davis directed his statement to anyone other than his friend. Further, while DiPino claimed that the statement put her in "extreme danger," she waited nearly two months before applying for the statement of charges. Davis claims that DiPino acted with malice when she filed the application for the arrest warrant. Davis further claims that even if he told his friend DiPino was a police officer, she should have known that making that statement was not a crime. Therefore, because "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable," DiPino acted with malice. *See Malley v. Briggs,* 475 U.S. 335, 346 n. 9, 106 S.Ct. 1092, 1098 n. 9, 89 L.Ed.2d 271, 281 n. 9 (1986) (indicating that a state trooper might be held liable for the issuance of an arrest warrant "if no officer of reasonable competence would have requested the warrant").

With regard to Davis's claims against Turner, we recognize that Turner is entitled to absolute judicial immunity from civil liability for violations of both Maryland law and 42 U.S.C. § 1983 for his actions as a judicial officer in issuing the arrest warrant. *See Parker v. State,* 337 Md. 271, 287, 653 A.2d 436, 444 (1995) (holding that a judge issuing an arrest

warrant was performing a judicial act and was entitled to absolute judicial immunity from civil liability); *see also Mandel v. O'Hara*, 320 Md. 103, 107, 576 A.2d 766, 768 (1990) (absolute judicial immunity protects judges so long as the act in question is judicial in nature and within the general scope of their jurisdiction). Nevertheless, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in [his or] her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565, 579 (1984).

In his complaint, Davis only requested injunctive and declaratory relief as well as attorney's fees against Turner and other similarly situated district court commissioners for their alleged routine issuance of arrest warrants without any finding of probable cause and for their alleged continued improper issuance of arrest warrants, rather than summonses, in violation of Maryland Rule 4–212(d)(1). We note that Turner never cross-petitioned to this Court on the issue of the whether the Court of Special Appeals correctly determined that the circuit court's grant of summary judgment in his favor was improper. Thus, given that we are confining our review of this case solely to the pleading issues, we make no determination as to whether injunctive or declaratory relief is available against Turner or other similarly situated court commissioners. We note that there is nothing in the facts which would tend to show that Davis would ignore a summons. DiPino never asserted in the application that Davis would ignore a summons and there was nearly a two month delay before the application for charges was filed. Both before and during this two-month period, Davis resided in and maintained a steady job in Ocean City. There was no indication that he would flee the jurisdiction or be difficult to locate. In fact, the Court of Special Appeals found that there was no "substantial likelihood" that Davis would ignore a summons and that Turner should have issued a summons instead of an arrest warrant. *See Davis*, 99 Md.App. at 294, 637 A.2d at 481. Thus, it is not inconceivable that Davis may be able to allege a violation of Md.Rule 4–212(d)(1) which may entitle him to declaratory and

injunctive relief. *See Pulliam,* 466 U.S. at 537, 104 S.Ct. at 1978, 80 L.Ed.2d at 576 (noting the requirement of a showing of an inadequate remedy at law and a serious risk of irreparable harm prior to obtaining injunctive relief).

Although the Court of Special Appeals dismissed the action because the plaintiff's complaint against respondents did not adequately plead malice, the court denied summary judgment because DiPino's and Turner's affidavits were not sufficient to establish that they acted without malice. *See Davis,* 99 Md. App. at 289, 291, 637 A.2d at 478, 480. The court's denial of summary judgment indicates that there were disputed inferences as to whether DiPino acted with malice. In dismissing the case, the intermediate appellate court stated: "It is the particular complaint that frames the precise issue before us." *Davis,* 99 Md.App. at 291, 637 A.2d at 479. In limiting its review solely to Davis's complaint, the court did not determine that the facts were insufficient to establish malice. Thus, if the defendants had filed a motion to dismiss and if Davis was given an opportunity to amend his complaint, the facts alleged might be sufficient to establish that DiPino and Turner acted with malice. Additionally, even if the circuit court did not provide Davis with an opportunity to amend his complaint, at least Davis would have been able to argue on appeal that precluding him from amending his complaint was an abuse of discretion and that the circuit court erred in granting the motion to dismiss.

As a result of the Court of Special Appeals's *sua sponte* raising of the issue of the adequacy of the pleadings, Davis was precluded from either amending his complaint to plead a legally sufficient cause of action or from having sufficient opportunity to prepare an argument that he did adequately plead a legally sufficient cause of action. The instant case demonstrates the prejudice that is suffered by a plaintiff when an appellate court affirms a trial court's judgment based on a motion to dismiss for failure to state a claim upon which relief can be granted when the motion on appeal is one for summary judgment.

Finally, we note that in support of their argument that the intermediate court's dismissal of the instant case for Davis's failure to state a claim upon which relief could be granted was proper, respondents cite *Robeson v. State*, 285 Md. 498, 403 A.2d 1221 (1979), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980) and *Offutt v. Montgomery Co. Bd. of Ed.*, 285 Md. 557, 404 A.2d 281 (1979) for the proposition that an appellate court may affirm a trial court's judgment on grounds not relied upon by the trial court or raised by the parties if those grounds appear in the record. The issues decided by those cases at the appellate level are clearly distinguishable from the instant case in which the Court of Special Appeals granted a motion to dismiss when the grant of a motion for summary judgment was the subject of the appeal. In *Robeson* and *Offutt*, we merely determined that an issue was decided correctly, albeit for different reasons. Neither of these cases were decided on alternative procedural grounds by substituting one motion, which was held to be improperly granted, for another motion and then affirming the judgment based on the alternative motion.

Additionally, *Robeson* and *Offutt* "represent exceptions to the general rule that an appellate court will not address matters that were not raised or decided in the trial court." *See Offen*, 334 Md. at 509, 639 A.2d at 1075. We further noted in *Offen* that "an appellate court might raise an issue *sua sponte* in a situation in which a lower court decided a case correctly but reached its result through faulty analysis ... [and] affirm the lower court on an alternative ground provided the record is adequate to support that ground." *Id.* In the instant case, the intermediate court's affirmance of the circuit court's judgment based on the fact that Davis failed to plead a claim upon which relief can be granted is not appropriate because it is not based on the fact that the trial court reached its decision through "faulty analysis"—the circuit court never considered whether Davis stated a legally sufficient cause of action. In addition, because the circuit court never considered whether Davis plead a legally sufficient cause of action, that ground is not supported by the record. Thus, *Robeson* and

*Offutt* cannot serve as support for the Court of Special Appeals's decision in the instant case.

Consistent with this Court's decisions, when an appellate court makes a determination that a trial court erred when it granted summary judgment because there was a genuine issue of material fact, the court should reverse and remand the case to the trial court for further proceedings. Because the plaintiff is prejudiced when an appellate court *sua sponte* raises and grants a motion to dismiss for failure to state a claim upon which relief can be granted, prohibiting an appellate court from considering that issue is consistent with this Court's refusal to consider an issue for the first time on appeal if to do so would prejudice the plaintiff. In addition, because the Maryland rules do not authorize a motion for summary judgment to be converted into a motion to dismiss at the trial level, this conversion is certainly inappropriate at the appellate level. Thus, the Court of Special Appeals erred in affirming the circuit court's judgment in the instant case based on Davis's failure to plead any claim upon which relief can be granted, when the issue on appeal was whether the circuit court was correct in granting summary judgment for the defendants.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR WORCESTER COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.*

ELDRIDGE, J., concurs in the result only.