**Larry Allen RICH, et al.**

v.

**UNITED STATES of America**

and

**George Dysico, et al.**

**No. Civ.A. DKC 00–2712.**

United States District Court, D. Maryland.

July 13, 2001.

Michael Jay Silverman, Columbia, MD, for plaintiffs.

Ariana Wright Arnold, United States Attorney, Baltimore, MD, for defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Plaintiffs, Larry Allen Rich and Gloria Jean Hall, filed suit against Defendants, United States of America, Agent George Dysico of the Federal Bureau of Investigation ("FBI"), and other unnamed FBI agents, under the Federal Tort Claims Act (Count I), and alleging violations of Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution (Count II), violations of Plaintiffs' civil rights under 42 U.S.C. § 1983 (Count II–A),[1] assault and battery, false arrest and illegal imprisonment, intentional infliction of emotional distress, trespass, and negligence (Counts III–VII), and violations of Plaintiffs' rights under Articles 24 and 26 of the Maryland Declaration of Rights (Count VIII). Currently pending and ready for resolution is Defendants' motion to dismiss, or, in the alternative, for summary judgment. (Paper No. 14). No hearing is deemed necessary. Local Rule 105.6 (D.Md.). For the reasons set forth below, Defendants' motion will be denied as to Count II and granted as to all other counts.

### 1. *Background.*

The following facts are not disputed or are taken in the light most favorable to Plaintiffs. The FBI was attempting to capture Carloe T. Hall, a suspect in two armed robberies in Georgia. In January 1999, the FBI had reason to believe that the suspect was in the Washington, D.C. area, where he was known to have visited his grandparents. The FBI learned that the suspect had previously been incarcerated in Prince George's County, Maryland, and obtained records and photographs from that incarceration. *See Defs.' Mot to Dismiss,* Ex. 4. The records indicated that the suspect had been visited by a woman named Gloria Hall, who was his mother or sister.[2] When unable to apprehend the suspect at his grandparents' address, the FBI attempted to locate Gloria Hall, and discovered that there were two women named Gloria Hall residing in the Prince George's County area.[3] Because one of these women was a senior citizen, and therefore unlikely to be the suspect's mother or sister, the FBI focused on the other, one of the Plaintiffs in this case.

The FBI initiated surveillance at Plaintiff Hall's home and questioned individuals familiar with her apartment complex. Two individuals recognized the suspect from a picture, and one of them verified that Gloria Hall resided at the home Defendants had been watching. *Defs.' Mot. to Dismiss,* Ex. 1, *Decl. of Special Agent Dysico,* at 2. Defendants, suspecting that Carloe Hall might be hiding there, decided to search Ms. Hall's home.

On the morning of February 4, 1999, at approximately 6:00 a.m., the FBI made a pretext call to Ms. Hall's apartment. Moments after a male answered the phone,

---

**1.** Plaintiffs' Section 1983 claim is actually styled "Count III." However, the tort claim following it also was styled "Count III." Continuing the designation suggested in Defendants' memorandum, the court will refer to Plaintiffs' Section 1983 claim as Count II–A.

**2.** The Prince George's County Sheriff's Department arrest report lists a "Hall, Gloria" as one of the suspect's visitors. The code for Gloria Hall indicates that she was a parent while a parenthetical next to her name indi-

cates that she was a sister. *See Defs.' Mot. to Dismiss,* Ex. 3.

**3.** It is not clear from the record, or from Defendants' motion, why the agents focused on the Prince George's County area. The Prince George's County Sheriff's Department report listed Gloria Hall as a resident of St. Mary's County. *See Defs.' Mot. to Dismiss,* Ex. 3.

the agents knocked on the door and announced their presence. *See Pls.' Resp. to Defs.' Mot. to Dismiss*, Ex. 1, *Aff. of Pl. Larry Allen Rich*, at 1. When Ms. Hall opened the door the agents "barged into Plaintiffs' house without the consent of either Plaintiff." Pls.' *Resp.*, at 2; Ex. 1, at 2. The agents did not have a search warrant and did not announce that they had an arrest warrant. *Pls.' Resp.*, Ex. 1, at 2. According to Plaintiffs, the agents pointed their guns at the Plaintiffs and demanded that they get on the floor. *Id.* After Ms. Hall informed the agents that she was not the mother or sister of the suspect, she told them that her two daughters were in the house. *Id.* at 2–3. At that point, some of the agents began to search the home, while others continued to point their guns at Plaintiffs.

Only when the agents finished their sweep of the home, according to Plaintiffs, did they stop pointing their guns at Plaintiffs and begin questioning them. According to Plaintiffs, they were not allowed to leave the premises and were not told why they were being held. Ms. Hall alleges that the agents told her that they knew the suspect was her son, and that she would be "locked up unless [she] admitted it." *Pls.' Resp.*, Ex. 2, *Aff. of Pl. Gloria Hall*, at 3. According to Mr. Rich, the agents told him that Ms. Hall would go to jail if she did not admit that the suspect was her son. *Id.*, Ex. 1, at 3.

Plaintiffs allege that the agents continued questioning them and remained on the premises for an unreasonable period of time. They allege that the agents would not let Ms. Hall get dressed even though she was only wearing a "see-through nightie," that the agents took "perverse ... pleasure in staring" at her, that the agents "touched Plaintiffs in a non-consensual manner during their break-in," and that the agents left the premises in "disar-

ray" and informed Plaintiffs that the Prince George's County police "would probably come by and do the same thing they did." *Pls.' Resp.*, at 5.

Plaintiffs filed administrative claims for injuries allegedly sustained during the entry of their home. After their claim was denied, they filed this action. Defendants' motion to substitute the United States for the individually named agents in the tort claims of Counts III–VII was granted, and counts III–VII were dismissed as to the individual Defendants. (Paper No. 16). Defendants now move to dismiss all claims, or, in the alternative, for summary judgment.

### 2. *Summary Judgment Standard.*

Summary judgment is appropriate when (1) there is no genuine issue of material fact and (2) the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990). A genuine dispute exists if a reasonable factfinder could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. Only disputes over facts that might affect the outcome of the case under governing law will preclude summary judgment. *Id.* at 252, 106 S.Ct. 2505; *Thompson Everett, Inc. v. Nat'l Cable Adver.*, 57 F.3d 1317, 1323 (4th Cir. 1995).

The moving party bears the initial burden of demonstrating that there is no genuine issue as to any material fact. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). The moving party may meet this burden by demonstrating the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving

party then must, through affidavits or other kinds of evidentiary material listed in Rule 56(c), demonstrate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. The non-moving party cannot rely on "the mere pleadings themselves," or simply set forth speculation, allegations, or denials to demonstrate genuine issues of fact. *Id.* Rule 56(f) provides that a party may assert in an affidavit that it needs discovery in order to present facts essential to justify its opposition. Such an affidavit, however, must specify the discovery needed. Plaintiffs' opposition laments the unavailability of discovery, but does not support by affidavit the necessity for discovery in order to oppose the pending summary judgment motion.

The court must not weigh the evidence. Rather, the court must determine whether enough evidence exists to enable a reasonable factfinder to find in favor of the non-moving party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The court must view all facts and inferences most favorably to the non-moving party, who is entitled to have the credibility of his evidence assumed, his version of events in dispute accepted, and internal conflicts resolved in his favor. *Charbonnages de France,* 597 F.2d at 414. However, the non-moving party is only entitled to inferences that "fall within the range of reasonable probability." *Thompson Everett,* 57 F.3d at 1323.

### 3. *Discussion.*

#### A. Constitutional Violations (Count II).

Plaintiffs claim violations of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Because the FTCA does not waive sovereign immunity for constitutional violations, 28 U.S.C. § 2679(b)(1)–(2), these claims may not be brought against the United States and

Plaintiffs may seek redress only against the agents individually. *See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 394–97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Defendants argue that Plaintiffs have no basis for their Fifth and Fourteenth Amendment claim and that the individual agents are entitled to qualified immunity from Plaintiffs' Fourth Amendment claim.

■ The Fourteenth Amendment is implicated only when there is State action. *See* U.S. CONST. amend. XIV, § 1. As no State action is alleged here, Plaintiffs' claim for violation of the Fourteenth Amendment must be dismissed.

■ Plaintiffs' claim that the agents' actions constituted a violation of the Fifth Amendment also fails. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (internal quotation marks omitted) (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The claims that the agents entered and searched Plaintiffs' home without their consent and would not allow them to move freely in the house or to leave are based on the Fourth Amendment's prohibition against unreasonable searches and seizures. Accordingly, Plaintiffs have no cause of action based on the Fifth Amendment.

Defendants argue that the agents are entitled to qualified immunity on the Fourth Amendment claim. According to Defendants, because the agents possessed

a valid arrest warrant[4] and had a "reasonable belief that the fugitive would be found inside the Plaintiffs' home, their entry into the Plaintiffs' home ... did not violate a clearly defined constitutional right." *Defs.' Mot. to Dismiss,* at 24. Defendants also argue that, even assuming that Plaintiffs were detained against their will, the decision to do so is, likewise, subject to qualified immunity.

 "Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Collins,* 141 F.3d 111, 114 (4th Cir. 1998) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Winfield v. Bass,* 106 F.3d 525, 530 (4th Cir.1997) (en banc)). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), insulates law enforcement officers from "bad guesses in gray areas," and ensures that they are liable only "for transgressing bright lines." *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992); *see also Wilson,* 141 F.3d at 114 (citing *Malley and Maciariello*). In determining whether qualified immunity applies, a court must analyze the "objective legal reasonableness" of the actions. *Harlow,* 457 U.S. at 819, 102 S.Ct. 2727. Under this inquiry, the court must discern whether the contours of the right in question are so clearly defined that "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In other words, "in the light of the pre-existing law the unlawfulness must

be apparent." *Id.* (citations omitted). In *Saucier v. Katz,* 531 U.S. 991, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) the Court reiterated that a ruling on qualified immunity "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Id.* It also prescribed the procedure for considering the issue:

A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry.

. . .

If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid

---

**4.** Plaintiffs have not questioned the validity of the arrest warrant.

the burden of trial if qualified immunity is applicable.

*Id.*

■ As of the time of this search, it was clearly established that a law enforcement officer may not legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant, absent exigent circumstances or consent. *Steagald v. United States,* 451 U.S. 204, 205–06, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Defendants, citing *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), argue that a valid arrest warrant requires a resident to open his door to the government and allow a search. *Payton,* however, was "specifically limited to the 'dwelling in which the suspect lives.'" *Wallace v. King,* 626 F.2d 1157, 1161 (4th Cir.1980) (quoting *Payton,* 445 U.S. at 603, 100 S.Ct. 1371). To search the home of a third party validly on the basis of an arrest warrant, "not only must the officers have probable cause to believe the person named in the arrest warrant is on the premises of the third person, *but there must also exist an appropriate exception to the warrant requirement,* e.g., consent of the owner or occupier of a dwelling unit or exigent circumstances." *Id.* (emphasis added). "Reasonable or probable cause to believe that a person for whom an arrest warrant has been issued is on the premises, standing alone, is not sufficient." *Id.* In this case, the home being searched was believed to belong either to the fugitive's mother or his sister. It was clearly not believed to be the residence of the fugitive.

■ To obtain qualified immunity, Defendants must establish that in light of this clearly established law, the agents reasonably could have believed that the search of Plaintiffs' home was lawful. They claim that Plaintiffs consented to the agents' entry and search, but Plaintiffs claim that they did not consent, and this conflicting evidence must be viewed in the light most favorable to Plaintiffs at this time.

Defendants also contend that exigent circumstances justified the warrantless entry. They state that the agents "were concerned about the risk of flight, and more importantly of the threat to officers at the scene and to innocent citizens if the fugitive was in the area and attempted to make a run for it." *Defs.' Mot. to Dismiss,* at 29. According to Defendants, the agents "had more than adequate reason to believe that the armed felony fugitive for whom they had an arrest warrant was lying in wait in the Plaintiffs' residence." *Id.*

■ "Exigent circumstances vary from case to case, and a determination of the issue is of necessity fact-specific." *Osabutey v. Welch,* 857 F.2d 220, 224 (4th Cir.1988). The exigencies claimed here, risk of flight and harm to the officers or the public, are not established by the facts. Defendants had been watching Ms. Hall's home for some time, and there is no evidence of an increased risk of flight if the time had been taken to obtain a warrant. In addition, the availability of another officer to keep watch on a third party's premises while a warrant is obtained is relevant to exigency, *Wallace,* 626 F.2d at 1161, and there is no evidence of unavailability here. Defendants have offered no evidence that obtaining a search warrant would have either thwarted their efforts or increased the risk of danger, and have thus failed to show how a reasonable agent in their position could conclude that exigent circumstances justified a warrantless entry.[5]

---

**5.** Defendants also argue that it was reasonable to detain Plaintiffs during the protective

In sum, Plaintiffs' Fourth Amendment claim presents genuine issues of material fact which preclude entry of summary judgment as to Count II.

## B. The Federal Tort Claims Act (Counts I, III–VII).

### 1. Subject Matter Jurisdiction.

Plaintiffs claim that Defendant United States is liable under the FTCA for the actions of the agents "as they were acting within the scope of their employment." *Compl.*, at 8.[6] Plaintiffs allege that their detention constituted a false arrest and imprisonment, that the agents were negligent in their execution of the arrest warrant, that they touched Plaintiffs in a nonconsensual manner, and that their presence in Plaintiffs' home constituted a trespass under Maryland law.

Defendants challenge the Court's subject matter jurisdiction over Plaintiffs' claims of intentional infliction of emotional distress, trespass, and negligence. Defendants argue that these torts are subject to the FTCA's discretionary function exception. *See* 28 U.S.C. § 2680(a).[7]

■ This court has jurisdiction to hold the United States liable under the FTCA only to the extent that the United States has waived its sovereign immunity. *See* 28 U.S.C. §§ 1346(b), 2674; *see also Jackson v. United States*, 77 F.Supp.2d 709, 712–13 (D.Md.1999) (analyzing federal jurisdiction under the FTCA). The FTCA provides a limited waiver of sovereign immunity for claims against the United States for tortious acts or omissions of its agents. 28 U.S.C. §§ 1346(b), 2674. It does not waive liability of the United States for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, *whether or not the discretion involved be abused.*" 28 U.S.C. § 2680(a) (emphasis added).

■ The purpose of the discretionary function exception is to prevent "judicial second-guessing" of decisions grounded in social and political policy. *United States v. Gaubert*, 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Federal courts have crafted a two step inquiry to determine whether acts are covered by the discretionary function exception. First, the act must be discretionary in nature and involve some element of judgment or choice. *See id.* at 322, 111 S.Ct. 1267. This first step "boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action." *Baum v. United States*, 986 F.2d 716, 719 (4th Cir.1993). Second, the act must implicate considerations of

---

sweep and to interview Plaintiffs. These arguments are, however irrelevant at this stage because "an unconstitutional entry into the home will vitiate the legitimacy of any search or seizure effected on that occasion because the privacy and solitude of the home are at the core of the Fourth Amendment's protection." *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1245 (7th Cir.1994) (citing *Soldal v. Cook County, Ill.*, 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992)).

6. Because the United States was substituted for the individual Defendants on those tort claims, Plaintiffs' only remaining target for

counts III–VII is the United States, and their only available avenue is the FTCA. Accordingly, counts III–VII (false arrest and illegal imprisonment, assault and battery, intentional infliction of emotional distress, trespass, and negligence) will be dealt with in conjunction with count I (FTCA).

7. Defendants have not asserted the discretionary function exception as a defense to Plaintiffs' claims of assault and battery and false arrest and imprisonment. *See Defs.' Mot. to Dismiss*, at 15, n. 16.

public policy. *Gaubert,* 499 U.S. at 322–23, 111 S.Ct. 1267. The court must "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Baum,* 986 F.2d at 720–21. The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines,* 467 U.S. 797, 808, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *see also Baum,* 986 F.2d at 719 (quoting *Varig Airlines* ).

 Defendants argue that Plaintiffs' claims of intentional infliction of emotional distress, negligence, and trespass are subject to the discretionary function exception. According to Defendants, these claims are based on "the manner in which the Task Force conducted the investigation which lead them to Plaintiffs' home," and "law enforcement investigations are discretionary functions." *Defs.' Mot. to Dismiss,* at 15. However, Plaintiffs' claims here are based on the entry and search of their home, not the prior investigation. These acts are the subject of Fourth Amendment limitations, *see Baum,* 986 F.2d at 719, and thus can hardly be said to be discretionary. Accordingly, the Court has subject matter jurisdiction over these claims.

## 2. FTCA and Maryland Law.

Defendants submit that they are entitled to summary judgment on all of Plaintiffs' FTCA claims because Plaintiffs have failed to establish that the agents in question acted with malice. The United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and is entitled to all defenses available to its agents. *Norton v. United States,* 581 F.2d 390 (4th Cir.1978).

 Plaintiffs' tort claims are governed by the law of Maryland, where the alleged tortious acts occurred. *See* 28 U.S.C. §§ 1346(b); 2674. Under Maryland law, "a law enforcement officer is not liable for assault and battery or other tortious conduct performed during the course of his official duties unless he acted with actual malice toward the plaintiff, i.e. with 'ill will, improper motivation or evil purpose.'" *Goehring v. United States,* 870 F.Supp. 106, 108 (D.Md.1994) (citing *Davis v. Muse,* 51 Md.App. 93, 100, 441 A.2d 1089, 1093 (1982)).

 "Malice is established by proof that the defendant-officer 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Lovelace v. Anderson,* 126 Md.App. 667, 693–94, 730 A.2d 774 (1999) (quoting *Davis v. DiPino,* 99 Md.App. 282, 290–91, 637 A.2d 475 (1994), *rev'd on other grounds,* 337 Md. 642, 655 A.2d 401 (1995)). "The mere assertion that an act 'was done maliciously, or without just cause, or illegally, or with wanton disregard, or recklessly, or for improper motive' is not sufficient." *Manders v. Brown,* 101 Md.App. 191, 216, 643 A.2d 931 (1994) (quoting *Elliott v. Kupferman,* 58 Md.App. 510, 528, 473 A.2d 960 (1984)). Plaintiffs *"must allege with some clarity and precision* those facts which make the act malicious." *Id.* (emphasis added).

 Plaintiffs argue that malice can be inferred from the agents' refusal to allow Ms. Hall to dress when she was wearing only a see-through nightgown, from their statement that the Prince George's County Police would also search Plaintiffs' home and question them, and from their failure to apologize before leaving the apartment.

*Pls.' Resp.*, at 13, 14. However, it is uncontradicted that the agents reasonably, and actually, believed that the suspect was probably in the apartment and, once they learned that the suspect ·was not in the apartment, that Ms. Hall was a close relative who might know his whereabouts. The only reasonable inference to be drawn from this evidence is that, while the agents may have acted unreasonably in not permitting Ms. Hall to dress and in threatening Plaintiffs with further police action, they were nevertheless motivated by a desire to find the suspect rather than any ill will toward Plaintiffs.

 Plaintiffs' claims of intentional infliction of emotional distress fails for an additional reason. Under Maryland law, an intentional infliction of emotional distress plaintiff must show the "truly devastating effect" of the conduct they were subjected to by proving an emotional response "so acute that no reasonable person could be expected to endure it." *Pemberton v. Bethlehem Steel Corp.*, 66 Md.App. 133, 161, 502 A.2d 1101, 1115 (1986). Plaintiffs have provided only an unsubstantiated allegation that they suffer from "severe emotional distress, indignity, trauma, and pain and anguish." *Pls.' Resp.*, Ex. 1, *Dep. of Gloria Hall*, at 4; *Id.*, Ex. 2, *Dep. of Larry Rich*, at 4. They provide no evidence to support this allegation, and therefore cannot establish an essential element of the tort of intentional infliction of emotional distress.

Accordingly, summary judgment will be entered in favor of the United States on Count I and Counts III–VII.

### C. Maryland Declaration of Rights (Count VIII) and 42 U.S.C. § 1983 (Count II–A).

 Plaintiffs' causes of action under 42 U.S.C. § 1983 (Count II–A) [8] and

8. *See supra* note 1.

the Maryland Declaration of Rights (Count VIII), also fail. First, Section 1983 applies only to *state* officers acting under color of *state* law, and not to federal officers. 42 U.S.C. § 1983; *see District of Columbia v. Carter*, 409 U.S. 418, 424–25, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); *Bivens*, 403 U.S. at 398 n. 1, 91 S.Ct. 1999. Second, Plaintiffs have not shown that the United States has waived its sovereign immunity as to State constitutional claims. "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). Plaintiffs bear the burden of demonstrating an unequivocal waiver of sovereign immunity, *Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995), and any waiver of sovereign immunity must be strictly construed in favor of the United States. *Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). When a plaintiff has failed to establish a waiver of sovereign immunity, a federal court lacks jurisdiction to hear the case. *Global Mail Ltd. v. U.S. Postal Service*, 142 F.3d 208, 210 (4th Cir.1998). Accordingly, Plaintiffs' claim under Section 1983 and the Maryland Declaration of Rights must be dismissed.

### 4. *Conclusion*

Plaintiffs' claim for violations of Section 1983, Amendments Five and Fourteen to the United States Constitution, and the Maryland Declaration of Rights will be dismissed. Defendants' motion for summary judgment will be granted as to Plaintiffs' FTCA and State tort claims. Defendants' motion for summary judgment on

Plaintiffs' Fourth Amendment claims will be denied.