Dr. Festus MOKWUE, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

Civ. A. No. 3:92–CV–1396–D.

United States District Court, N.D. Texas, Dallas Division.

April 4, 1995.

Patricia Wilhite, Dallas, TX, and Michael Watson of Law Office of Michael A. Watson, Dallas, TX, for plaintiff.

Rebecca A. Gregory, Asst. U.S. Atty., Dallas, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

This *Bivens*[1] action is before the court on the motion to dismiss or, alternatively, for summary judgment of defendants United States of America (the "United States"), Department of the Treasury ("Treasury Department"), and U.S. Customs Service ("Customs Service")[2] filed April 25, 1994. Defendants

---

1. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

2. Plaintiff originally sued four fictionally-named individual U.S. Customs Officials, the Customs

contend the discretionary function exception to the Federal Tort Claims Act deprives this court of subject matter jurisdiction and that plaintiff has failed to state a claim on which relief can be granted. The court dismisses the action in part and grants summary judgment in part.

## I

Plaintiff Dr. Festus Mokwue ("Mokwue") brings this action arising out of an incident that occurred on December 14, 1989 at the Dallas–Fort Worth International Airport ("DFW Airport"). According to his complaint,[3] Mokwue, a Nigerian citizen who is a legal permanent resident of the United States, arrived at DFW Airport at approximately 2:00 p.m., returning from a seven-day trip to Dusseldorf, Germany. Upon entering customs, a female Customs Service agent conducted a search of Mokwue's luggage and demanded to see his passport. She noted that Mokwue is Nigerian and then commenced interrogating him concerning the reasons for and details of his trip. The agent then instructed Mokwue to follow her so that she could conduct a search for illegal drugs. The agent searched Mokwue's clothing and person, confiscated his passport, interrogated him again concerning his purpose for traveling and his activities, and inquired whether Mokwue had anything in his stomach. The agent also asked Mokwue several questions about a bottle of painkillers in his possession. Thereafter, the agent asked Mokwue to accompany her to another area, where his luggage was opened and searched a second time, and Mokwue was again searched. The agent then instructed Mokwue to accompany her to another location.

At this location, the female agent was joined by two male agents. The three officials informed Mokwue that they wanted to take him into a room where a full strip search would be conducted. Mokwue was ordered to strip himself in front of a female agent and in an open room where passersby in the hallway could view him. While the female agent observed, the two male agents conducted an anal search of Mokwue. After nothing was found, another agent was called, and he conducted a second anal search. Again, no illegal contraband was found. The agents conferred and then conducted third and fourth anal searches, during which nothing was found. They also questioned Mokwue about the medication in his possession.

The agents detained Mokwue in the room for approximately three and one-half hours. Of this time period, Mokwue was naked and chilled for approximately one hour. Agents then informed Mokwue that he would be taken to a hospital for stomach X-rays. When one of the agents told Mokwue he would have to sign a consent form, Mokwue refused, and the officer responded that agents would be required to obtain a search warrant to search his stomach. Although Mokwue again refused, he eventually gave in under duress. The X-ray procedures consumed three to four hours. No contraband was discovered. During the entire time period, Mokwue was forced to remain undressed, and the chill eventually caused him to shiver visibly. The agents then abandoned Mokwue at the hospital, and he was forced to make his own arrangements for transportation to his home.

Mokwue called the Customs Service the next day to obtain the agents' names. When this request was refused, he filed an administrative claim for damages and injury based on the incident. This claim was denied, and

---

Service, and the Treasury Department. In a memorandum opinion and order filed April 22, 1993, the court granted summary judgment in favor of the individual defendants on the ground that plaintiff's actions against them were time-barred. Mem.Op. at 3. The court also dismissed plaintiff's common law tort claims. *Id.* at 4. The court entered a Fed.R.Civ.P. 54(b) final judgment as to the individual defendants. Plaintiff appealed that judgment, but the Fifth Circuit dismissed the appeal on August 17, 1993 based on plaintiff's failure to file a brief. *See Mokwue*

*v. United States*, No. 93–1496 (5th Cir. Aug. 17, 1993) (order).

3. Defendants deny the truth of various of these allegations. They have moved the court pursuant to Fed.R.Civ.P. 11 to dismiss the action, contending Mokwue perjured himself in his complaint, in his response to various motions filed by defendants, and during his deposition. The court denies defendants' Rule 11 motion because they are entitled to relief without reaching that motion.

the instant lawsuit followed. Mokwue alleges constitutional actions against the remaining defendants for violations of Fourth Amendment rights against illegal search and seizure, and illegal detention and arrest; and of a Fifth Amendment right to be free from excessive and unnecessary use of force. He also brings claims for violation of a right of privacy and right to equal protection of the laws regardless of race, national origin, and color.

Defendants move to dismiss or, alternatively, for summary judgment. They contend (1) the Customs Service and Treasury Department are not amenable to suit in tort actions, and the United States is the only proper party; (2) the United States has excepted certain conduct from its waiver of sovereign immunity, and cases that fall within such an exception must be dismissed for lack of subject matter jurisdiction; (3) the discretionary function exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), is a limitation on the waiver of sovereign immunity, and bars all of Mokwue's claims in the present case to the extent based on Customs Service officials' questioning, detention, the manner of the searches conducted, and the officials' motivation for conducting the searches; (4) the court must only resolve on the merits the reasonableness of the strip search and X-ray examination and, in the context of border searches, and under the totality of the circumstances, Customs Service inspectors were authorized to detain plaintiff, conduct a strip search, and have an X-ray examination performed; and (5) Mokwue's action should be dismissed because he has committed perjury.

## II

■ Defendants' contention that the Treasury Department and Customs Service are not proper parties need not long detain the court. It is settled that the only proper defendant in a tort action is the United States. *Galvin v. OSHA,* 860 F.2d 181, 183 (5th Cir.1988) (suit against United States under FTCA is exclusive remedy for tort claims arising from government agencies or employees). Therefore, Mokwue's lawsuit against the Customs Service and Treasury Department is dismissed without prejudice for want of jurisdiction.

## III

The court will address, in the procedural context of a motion to dismiss, the United States' arguments based upon the discretionary function exception to the FTCA.

28 U.S.C. § 2680(a) exempts

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

■ In *Dalehite v. United States,* 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953), the Court held that the exception applies where there is room for policy judgment and decision. To determine whether the exception applies, the court must examine the applicable statutes to ascertain whether an employee was in fact exercising discretion. The United States has amply demonstrated in its brief that Customs Service officers are vested with the discretion whether to stop, search, inspect, and examine persons and their baggage coming into the United States from foreign countries. The First Circuit has held that such decisions are discretionary and that § 2680(a) insulates the United States from liability. *Attallah v. United States,* 955 F.2d 776, 784 (1st Cir. 1992). Accordingly, to the extent Mokwue's action against the United States is predicated upon the decisions of Customs Service officers to search, seize, detain, and arrest him, it must be dismissed because the court lacks jurisdiction.

## IV

The United States argues next that the only controversy that the court must resolve is whether the strip search and X-ray of Mokwue were reasonable when measured under the totality of the circumstances. The

court will address this issue in the context of the United States' summary judgment motion.

Mokwue does not appear to contest that this is the only remaining issue to be resolved, although he contends the determination of reasonableness is not made with respect to the inspectors' conduct, but instead pertains to whether their suspicions were reasonable. In other words, Mokwue argues that the dispositive question is whether the Customs Service officers reasonably suspected that he was smuggling drugs before they strip-searched him, X-rayed him, and had a physician examine him. Mokwue maintains that the officers lacked reasonable suspicion and that there are six genuine issues of material fact that preclude summary judgment. The court disagrees.

■ The Supreme Court addressed in *United States v. Montoya de Hernandez*, 473 U.S. 531, 541, 105 S.Ct. 3304, 3310, 87 L.Ed.2d 381 (1985), the authority of government officers to conduct searches and inspections of persons entering at United States borders. Routine inspections require no suspicion. *Id.* at 538, 105 S.Ct. at 3309. Where an agent reasonably suspects that a traveler might be smuggling contraband, a search and inspection is justified. *Id.* at 541, 105 S.Ct. at 3310. Because the smuggling of narcotics by way of ingestion or body cavity insertion is now common, and smuggling is increasingly difficult to detect, persons entering this country may be subjected to such searches without probable cause and without a warrant. *Id.* at 538, 105 S.Ct. at 3309; *United States v. Mejia*, 720 F.2d 1378, 1382 (5th Cir.1983). The standards for such border searches consider that the Fourth Amendment balance between the government and an individual's right of privacy weighs more favorably to the government. *Montoya*, 473 U.S. at 545, 105 S.Ct. at 3309. Given the Customs Service's extraordinary search and detention powers in this area, and the diminished Fourth Amendment expectations of privacy at the border, even highly intrusive border searches are often lawful, sometimes resulting in distasteful consequences to innocent travelers.

■ In *Montoya* the Supreme Court specifically declined to decide what level of suspicion is required for involuntary body cavity searches or involuntary X-rays. *Id.* at 541 n. 4, 105 S.Ct. at 3310 n. 4.[4] The Fifth Circuit has held that searches more intrusive than a simple frisk or pat-down of a person require "reasonable suspicion" on the part of the customs agent.[5] *See United States v. De Gutierrez*, 667 F.2d 16, 19 (5th Cir.1982); *United States v. Sandler*, 644 F.2d 1163, 1166 (5th Cir.1981); *United States v. Himmelwright*, 551 F.2d 991, 995 (5th Cir.), *cert. denied*, 434 U.S. 902, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). The "reasonable suspicion" test as applied by the Fifth Circuit is a flexible one. The more intrusive the search, the greater must be the reason for conducting the search that results in such invasion. What constitutes "reasonable suspicion" to justify a particular search may not justify a more intrusive or demeaning search. *Sandler*, 644 F.2d at 1166; *United States v. Afanador*, 567 F.2d 1325, 1328 (5th Cir.1978). "Reasonable suspicion" in this context includes a requirement that customs agents have cause to suspect that contraband exists in the particular place that the agents decide to search. *Himmelwright*, 551 F.2d at 995. Each case must be considered on its own facts. *Id.; Sandler*, 644 F.2d at 1166. Reasonable suspicion may arise out of trained officers' "common sense conclusio[ns] about human behavior." *Montoya*, 473 U.S. at 542, 105 S.Ct. at 3311. The articulable facts on which reasonable suspicion may rest need not appear to reflect criminal activity when considered individually. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). Such facts may be individually consistent with innocent travel, but when considered together may amount to

---

4. The Court did note the appropriateness of offering suspects an opportunity to undergo a medical examination in lieu of the extended detention necessary while awaiting bowel movements.

5. The United States cites *United States v. Oyekan*, 786 F.2d 832 (8th Cir.1986), as the case containing the *Fifth* Circuit's consideration of the level of suspicion required to justify strip searches and X-ray examinations. *Oyekan* is an *Eighth* Circuit decision.

reasonable suspicion. *Id.* at 9, 109 S.Ct. at 1586. These objective facts may include a particular traveler's personal characteristics, travel patterns, and resemblance to drug courier "profiles." *See, e.g., id.* at 10, 109 S.Ct. at 1587; *Montoya,* 473 U.S. at 533–34, 105 S.Ct. at 3306–07.

■ The court concludes that based on the record, no genuine issue of material fact exists as to whether the requisite legal standards were met in this case, despite the intrusive and admittedly degrading searches to which Mokwue was subjected. Although plaintiff filed a response to the motion for summary judgment, he tendered no supporting evidence. The evidence submitted in support of the motion for summary judgment is thus uncontroverted. This uncontroverted evidence indicates:

Mokwue gave inconsistent answers during his interview.

Mokwue was uncooperative and evasive.

Mokwue stated he had traveled to Germany to attend a medical conference, although he carried no documentation to establish this claim. He later stated the purpose of his trip was to visit his brothers.

Mokwue's airline ticket was purchased by a "friend." When this information was verified, the person stated that he was an acquaintance who did not know Mokwue well but believed Mokwue had financial problems.

Mokwue claimed to be a physician but could not state his specialty, where he attended school, or answer basic medical questions. He carried no credentials to establish he was a doctor.

Mokwue later stated he had not actually completed his training, meaning he was not licensed to practice medicine. His travel bag contained prescription drugs *on which he was listed as the prescribing physician.*

Mokwue was traveling from what customs considered a high narcotic transit location. Mokwue traveled with pain killers, suppositories, and stomach medications. Internal carriers often take stomach medications to lower their stomach acid so as to prevent the "balloons" or other material containing the narcotics from being dissolved. Additionally, they may take medications to slow down or stop the natural body function of expelling fecal matter. For that reason, they also carry suppositories to later expel the balloons from the system.

Mokwue stated he was experiencing chest pains which he treated by rubbing "Vapo Rub" on his chest. In view of the fact that Mokwue claimed he was a physician, this seemed a particularly odd choice for attending to a potential heart problem. Agents also felt he might be feigning illness.

Mokwue's luggage consisted of a garment bag containing a small amount of clothing and a small bag containing toiletries. His luggage appeared inadequate for the trip in question. Mokwue stated he had not been employed since 1985, yet he was transporting two gold watches with receipts valuing them at $16,000. The watches had not been declared and the receipts for them were discovered in Mokwue's inside coat pocket during a pat-down search. He would not state where he derived his present income. Smugglers often receive compensation by means of valuable articles which are easily convertible into cash.

Mokwue stated that he had not eaten in three days. Narcotics swallowers are known not to eat or drink and to eliminate all material from the stomach and intestines in order to retard digestion.

Although Mokwue told customs officials where his wife was employed, he could or would not state her position with the firm. Mokwue possessed no cash or credit cards. Although a female customs agent initially detained Mokwue, interviewed him, and searched his luggage, no female agent was present during any strip search or anal search of Mokwue.

Mokwue was subjected to a pat-down search, followed by a strip search that included a visual check of his anal area. The strip search was conducted by male customs agents in a private search room, and the door to which was closed. No female agents were present.

Only one visual check of Mokwue's anal area occurred.

Mokwue's anus was not "invaded."

Mokwue's race or national origin was not mentioned by customs agents.

Mokwue was not threatened or coerced to sign the consent to X-ray form.

Mokwue requested that his wife pick him up at the hospital following the X-rays. He was not abandoned by customs agents.

The court concludes that when considered together, the facts elicited from the routine detention, questioning, and luggage inspection of Mokwue provided customs officials with strong indicia that Mokwue was involved in drug trafficking. These facts clearly presented the required reasonable suspicion to support the conclusion that Mokwue was smuggling drugs, possibly on his body or within a body cavity. Although no drugs were found during the external search, the agents had the reasonable suspicion necessary to justify X-ray examination. Thus, although intrusive and distasteful, the searches to which Mokwue was subjected were lawful. Further, the summary judgment evidence indicates they were conducted in a reasonable manner. The factors present in this case—inconsistent responses, refusal to answer questions, implausible explanations, prescription drugs typically used by drug swallowers, ticket purchased under suspicious circumstances, unemployed yet possessing two gold watches valued at over $16,000, no corroboration of claims of being a physician or that he was attending a medical conference, inability to answer basic medical questions—exceed the circumstances necessary to establish reasonable suspicion.

In plaintiff's response, he does not dispute the facts that establish reasonable suspicion on the part of the customs agents, but rather attempts to explain how these facts should have been interpreted by customs agents. These arguments are insufficient to defeat summary judgment. The court determines that no genuine issue of material fact exists as to whether reasonable suspicion sufficient to justify the detention and searches of Mokwue existed, and thus whether the searches were lawful. The United States' motion for summary judgment is granted.

## V

The United States also moves for recovery of its litigation expenses and attorney's fees. This motion is denied.

\* \* \*

The court grants in part defendants' motion to dismiss, and otherwise grants summary judgment in favor of the United States. A judgment is filed with this opinion.

**SO ORDERED.**