896 F.Supp. 467 (1995)
James GARCIA and Evaristo Vasquez, Plaintiffs,
v.
UNITED STATES of America, Defendant.
Civ. A. No. 94-6615.
United States District Court, E.D. Pennsylvania.
August 18, 1995.
*468 *469 David Rudovsky, Philadelphia, PA, for plaintiffs.
David F. McComb, Asst. U.S. Atty., Philadelphia, PA, for the Government.

OPINION AND ORDER
VAN ANTWERPEN, District Judge.
Plaintiffs James Garcia and Evaristo Vasquez instituted this action against the United States under the Federal Tort Claims Act, ("FTCA") 28 U.S.C. §§ 1346(b), 2671-2680, seeking money damages for their alleged wrongful detention and search by United States Customs Service inspectors. The United States has moved for judgment[1] on the ground that plaintiffs' claims are barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(b).

I. FACTS
On February 3, 1994, plaintiffs, two Hispanic males who are longtime friends, returned to the United States following a seven-day vacation trip to Jamaica. They arrived *470 at Newark International Airport at approximately 5:30 p.m. After they secured their luggage, they were stopped by United States Customs Service Senior Inspectors Sebastiano Faraone and Domenico Calise. Inspectors Faraone and Calise were both acting as "roving" inspectors that night, meaning that they would stop certain incoming passengers for questioning and examination in order to determine whether they might be carrying illegal narcotics or other contraband. Inspector Faraone stopped Mr. Vasquez, and Inspector Calise stopped Mr. Garcia.
At the Customs inspectors' request, plaintiffs produced appropriate papers documenting their trip and their identities. Plaintiffs also responded to various questions put to them by the inspectors. Inspector Faraone questioned Mr. Vasquez, and Inspector Calise questioned Mr. Garcia. During this initial questioning, plaintiffs' luggage was searched. Plaintiffs were then taken from the public area of the airport to separate rooms in a nearby private area, where Inspectors Faraone and Calise performed a pat-down search of each of them. Neither the luggage searches nor the pat-downs revealed any drugs or contraband.
Inspectors Faraone and Calise then sought authorization from Supervisory Customs Inspector Herbert Herter to elevate the examinations of plaintiffs to include strip searches and x-rays for the purpose of determining whether they were smuggling drugs internally. After Supervisor Herter gave the required approval, Inspectors Faraone and Calise explained to plaintiffs individually that they had the choice of being x-rayed or taken to the hospital to be detained for monitored bowel movements. Both plaintiffs executed consent forms authorizing x-rays. Before being transported to the hospital, plaintiffs were each subjected to a strip search, which included being required to spread their buttocks for a visual examination. These searches also did not reveal any drugs or contraband.
Mr. Garcia was handcuffed and taken to a local hospital for an x-ray. Approximately two hours later, the x-ray was determined to be negative, and Mr. Garcia was immediately released from detention and returned to the airport.
Mr. Vasquez was also handcuffed and taken to St. Francis Hospital for an x-ray. The doctor who read his x-ray noted "... possible foreign body ingestion." Accordingly, Mr. Vasquez was detained for monitored bowel movements.
Mr. Vasquez was admitted to the hospital, given a hospital gown and administered mineral oil. The hospital log shows that Mr. Vasquez had monitored bowel movements at 1:05 a.m., 1:35 a.m., 1:55 a.m., and 2:35 a.m. Mr. Vasquez was handcuffed to a hospital bed throughout this period, and after each bowel movement was provided with gloves and required to probe through his stool with his fingers to check for foreign bodies. No drugs or contraband were found.
Between his second and third bowel movements, a second x-ray was taken of Mr. Vasquez. This x-ray was determined to be "inconclusive." Finally, after a third x-ray was determined to show no sign of any foreign bodies, Mr. Vasquez was released. He was returned to the airport at approximately 3:30 a.m.
On November 1, 1994, plaintiffs filed this action against the United States under the Federal Tort Claims Act, claiming that the actions of the Customs inspectors were taken without reasonable suspicion or probable cause and were based on plaintiffs' race and ethnicity. Plaintiffs contend that their Fourth and Fifth Amendment rights have been violated and that the inspectors' actions constitute false arrest, assault, battery, false imprisonment, unlawful search, and invasion of privacy under the laws of New Jersey. Plaintiffs have since clarified that they do not challenge the initial decision of the Customs inspectors to stop and question them, but instead base their claims upon the subsequent detention and searches described above. See Plaintiff's Brief of July 10, 1995 at p. 14 n. 3.

II. STANDARD OF REVIEW
A federal court has the power and the duty to examine its own subject matter jurisdiction at any stage of the proceedings. *471 Mansfield, Coldwater & Lake Michigan Railway v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884); Liberty Mutual Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 751 (3d Cir.1995); see also Fed.R.Civ.Proc. 12(h)(3).
Where a 12(b)(1) motion attacks the complaint on its face, the court must consider the allegations of the complaint as true in making its determination as to whether subject matter jurisdiction exists. See Mortensen v. First Federal Savings & Loan Ass'n, 549 F.2d at 891. The standard of review is the same as that of a 12(b)(6) motion. Id.
Where a 12(b)(1) motion attacks the existence of subject matter jurisdiction on a factual basis, however, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. The court may engage in such a factual evaluation at any stage in the proceedings. Id. The plaintiff bears the burden of proof that jurisdiction does in fact exist. Id.

III. DISCUSSION
The Federal Tort Claims Act gives district courts jurisdiction over:
civil actions on claims against the United States, for money damages, ..., for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
28 U.S.C. § 1346(b). "The FTCA thus waives the government's sovereign immunity with respect to tort claims against the United States for money damages." Fisher Bros. Sales, Inc. v. United States, 46 F.3d 279, 284 (3d Cir.1995), petition for cert. filed, 63 U.S.L.W. 3788 (U.S. Apr. 20, 1995) (No. 94-1722).
The FTCA's waiver of sovereign immunity does not, however, apply to
[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
28 U.S.C. § 2680(a). Because the discretionary function exception is a limitation on the waiver of sovereign immunity, claims which fall within the exception must be dismissed for lack of subject matter jurisdiction. Attallah v. United States, 955 F.2d 776, 782 (1st Cir.1992) (citations omitted); see also Fisher Bros., 46 F.3d at 282. As the Third Circuit recently explained, the exception "is designed to protect policymaking by the politically accountable branches of government from interference in the form of `second-guessing' by the judiciary  second guessing the result of which burdens the public fisc and the prospect of which skews the decisionmaking process of executive and legislative policymakers." Fisher Bros., 46 F.3d at 284 (citing United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808, 104 S.Ct. 2755, 2761-62, 81 L.Ed.2d 660 (1984)).
In deciding whether the discretionary function exception applies to the conduct upon which a given claim is based, a court must engage in a two-pronged inquiry. Id. First, the court must consider whether the challenged conduct is "`a matter of choice for the acting employee.'" Id. (quoting Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)). Second, "the court must determine whether the challenged discretionary actions or decisions were `based on considerations of public policy'" and thus were of the kind the discretionary function exception was designed to protect. Id. (quoting Berkovitz, 486 U.S. at 537, 108 S.Ct. at 1959). "[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." Varig Airlines, 467 U.S. at 813, 104 S.Ct. at 2764.
Here, defendant focuses on this two-pronged inquiry, arguing that the conduct at issue, namely the Customs inspectors' decisions to detain and search plaintiffs, is of the type protected by the discretionary function exception. Accordingly, defendant contends that this action must be dismissed for lack of *472 subject matter jurisdiction. In support of its argument, defendant relies primarily on Berkovitz, Varig Airlines, and the Third Circuit's recent decision in Fisher Bros.
In response, plaintiffs first argue that the cases relied upon by defendant are inapposite because, unlike the case at bar, they do not involve actions brought under the intentional tort provision of the FTCA, 28 U.S.C. § 2680(h). Plaintiffs contend that cases brought pursuant to § 2680(h) are not subject to the discretionary function exception. Second, plaintiffs assert that even if cases brought pursuant to § 2680(h) are subject to the discretionary function exception, in this case the inspectors' conduct cannot be deemed discretionary because it violated the Constitution and federal officials do not have discretion to commit unconstitutional acts. Finally, plaintiffs argue that even if the inspectors' conduct was not unconstitutional, it does not fall within the discretionary function exception because it did not involve the exercise of policy choice.

A. § 2680(h)  The intentional tort proviso
The FTCA's intentional tort exception retains the immunity of the United States in cases involving:
any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising ... out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.
28 U.S.C. § 2680(h). The proviso waiving the immunity of the United States for suits arising out of certain intentional torts committed by federal investigative and law enforcement officers was added by amendment in 1974. See Act of Mar. 16, 1974, Pub.L. No. 93-253, § 2, 88 Stat. 50. As its legislative history reveals, the proviso was intended to create a remedy against the United States in cases where law enforcement officers conduct "no-knock" raids or otherwise violate the Fourth Amendment. See S.Rep. No. 588, 93d Cong., 2d Sess. 2-3 (1974), reprinted in 1974 U.S.C.C.A.N. 2789, 2790-91.
In considering the interaction between the intentional tort proviso and the discretionary function exception of § 2680(a), some courts have expressed the concern that application of the discretionary function exception to suits brought under the proviso would all but eliminate the remedy Congress sought to create.[2] Plaintiffs urge that, in order to avoid such a result, this court should hold that even certain discretionary conduct is actionable under the intentional tort proviso. In fact, plaintiffs argue that the Third Circuit has already held that "allegations of intentional torts arising from searches, seizures or arrests are actionable even though some discretion is involved in those actions." Plaintiffs' Brief, at 10 (citing Pooler v. United States, 787 F.2d 868 (3d Cir.), cert. denied, 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986)).
First, we find that no such holding was reached in Pooler. Although the Pooler plaintiffs argued that suits brought pursuant to the intentional tort proviso would be actionable even if they fell within the discretionary function exception, the Third Circuit never reached that issue.[3]
*473 Second, unlike the above-cited courts, we are not persuaded that the application of the discretionary function exception to cases brought pursuant to the intentional tort proviso threatens to eviscerate the remedy Congress sought to create when it enacted the proviso.
The discretionary function exception does not encompass conduct which violates the Constitution, a statute, or an applicable regulation. United States Fidelity & Guaranty Co. v. United States, 837 F.2d 116, 120 (3d Cir.), cert. denied, 487 U.S. 1235, 108 S.Ct. 2902, 101 L.Ed.2d 935 (1988).[4] "Federal officials do not possess discretion to violate constitutional rights or federal statutes." Id.[5]
Consequently, cases brought pursuant to the intentional tort proviso that involve conduct which violates the Constitution or a federal statute, regulation, or policy will be able to surmount the discretionary function hurdle.[6] In addition, there may be still other cases involving intentionally tortious conduct which, although they do not involve Constitutional or statutory violations, involve other conduct which does not meet the requirements of the two-pronged discretionary function test. See Gray v. Bell, 712 F.2d 490, 507 (D.C.Cir.1983), cert. denied, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984) ("It seems clear that the intentional torts listed under the proviso to section 2680(h) may be committed without any exercise of discretion.").
Because these two categories of cases would remain actionable even if the discretionary function exception were applied, we *474 find no merit in plaintiffs contention that application of the exception to cases brought under § 2680(h) would result in the dismissal of most of those cases on grounds of sovereign immunity. Instead, we find that application of the discretionary function to cases brought under § 2680(h) is entirely consonant with the Congressional purpose of "providing a remedy against the Federal government for innocent victims of Federal law enforcement abuses." Sen.Rep. No. 93-588, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 2789, 2792.
The conclusion that cases brought pursuant to the proviso must satisfy the discretionary function test also finds support in the language of the discretionary function exception. Section 2680(a) plainly states that the FTCA's general waiver of sovereign immunity is inapplicable to "any claim" based on a discretionary function. 28 U.S.C. § 2680(a); see also Gray v. Bell, 712 F.2d at 507. Furthermore, to read the intentional tort proviso as limited by the discretionary function exception comports with the basic principle that a waiver of sovereign immunity must be construed strictly in favor of the government. See Ruckelshaus v. Sierra Club, 463 U.S. 680, 685-86, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983).
Accordingly, we reject plaintiffs' argument that even discretionary conduct is actionable under the intentional tort proviso. We hold that claims brought pursuant to the FTCA's intentional tort proviso must satisfy the discretionary function exception.[7]See Gray v. Bell, 712 F.2d at 508 (holding that a plaintiff "must clear the `discretionary function' hurdle and satisfy the `investigative or law enforcement officer' limitation" in order to sustain his claim); McElroy v. United States, 861 F.Supp. 585, 593 (W.D.Tex.1994) ("Section 2680(h) does not ... trump the discretionary function exception of 2680(a).").

B. Unconstitutional conduct and § 2680(a)
Invoking the above-cited rule that conduct cannot be discretionary if it violates the Constitution, plaintiffs next argue that even if the discretionary function exception applies to claims brought under § 2680(h) in general, in this case the exception cannot shield the United States from liability because the challenged conduct of the inspectors was unconstitutional. Relying on United States v. Montoya de Hernandez, 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985), plaintiffs contend that the Customs inspectors' detention and search of them violated the Fourth Amendment because it was without "reasonable suspicion" and was instead based on plaintiffs' race.
In reply, defendant contends that plaintiffs' argument is irrelevant because constitutional tort claims are not cognizable under the FTCA. Defendant also argues that the factual record shows that the detention and search of plaintiffs was supported by reasonable suspicion.
Defendant is correct that constitutional tort claims are not actionable under the FTCA. See FDIC v. Meyer, ___ U.S. ___, ___, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994) ("[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."). Plaintiffs, however, do not seek to impose liability on the United States for a constitutional tort. Rather, their claim finds its substantive basis in the common law of New Jersey. See, e.g., Bartolo v. Boardwalk Regency Hotel Casino, Inc., 185 N.J.Super 534, 449 A.2d 1339 (1982) (tort of false imprisonment is established upon showing any unlawful restraint upon a man's freedom of locomotion).
While the FTCA does not waive the sovereign immunity of the United States for a claim based on conduct that violates only the Constitution, it clearly does waive that sovereign immunity for claims based on state law. See FDIC v. Meyer, ___ U.S. at ___, 114 S.Ct. at 1001 (state law is the source of substantive liability under the FTCA). Defendant *475 has offered no authority, nor have we found any, that would support a holding that claims which are otherwise actionable under state law are prohibited under the FTCA simply because the challenged conduct also violates the Constitution. In fact, case law is to the contrary. See Rhoden v. United States, 55 F.3d 428, 432 n. 5 (9th Cir.1995) (plaintiff could base FTCA claim on conduct which both violated the Constitution and amounted to false imprisonment under California state law); Birnbaum v. United States, 436 F.Supp. 967, 983-86 (E.D.N.Y. 1977), aff'd on other grounds, 588 F.2d 319 (2d Cir.1978) (constitutional tort action arising out of one of § 2680(h)'s six enumerated torts is viable under the FTCA if sanctioned by the "law of the place"); see also Carlson v. Green, 446 U.S. 14, 19-20, 23, 100 S.Ct. 1468, 1471-72, 1474, 64 L.Ed.2d 15 (1980) (noting that same conduct might give rise to both Bivens and FTCA actions). Accordingly, defendant's observation that the FTCA does not waive sovereign immunity for constitutional torts, while correct, provides no defense to plaintiffs' argument that judgment is precluded because the discretionary function exception does not shield unconstitutional conduct.
Nor can we grant judgment in favor of defendant or dismiss based on its argument that the Customs inspectors' conduct was indeed based upon "reasonable suspicion." In the first place, in holding that the detention of a suspected alimentary canal smuggler at the border, beyond the scope of a routine customs search and inspection, must be supported by "reasonable suspicion," the Montoya court specifically left open the question of what level of suspicion would justify the types of searches at issue here. See Montoya, 473 U.S. at 541 n. 4, 105 S.Ct. at 3310 n. 4 ("[W]e suggest no view on what level of suspicion, if any, is required for nonroutine border searches such as strip, body-cavity, or involuntary x-ray searches."). As neither party has briefed this issue, even if we were at this point convinced that reasonable suspicion existed, we would be reluctant to hold on the record before us that all of the inspectors' actions were consistent with constitutional requirements.
We find that the present record contains disputed issues of fact and credibility issues on the issue of whether reasonable suspicion existed, or whether the inspectors based their decision on plaintiffs' race. For example, although defendant has provided the testimony of the inspectors as to the factors they relied on in deciding to detain and search plaintiffs, plaintiffs have presented their own sworn verifications which in several ways contradict the version of events as described by the inspectors. We believe that a hearing under Federal Rule of Civil Procedure 43(e) will be necessary to resolve the credibility issues.[8] The purpose of this hearing is to resolve the issue of jurisdiction prior to a trial[9] on the merits.
Because we cannot at this point preclude the possibility that the inspectors' conduct was unconstitutional,[10] we cannot hold that *476 the challenged conduct falls within the discretionary function exception. Accordingly, we must deny defendant's motion. See Prisco v. Talty, 993 F.2d 21, 26 n. 3 (3d Cir.1993) (noting that discretionary function exception did not present a possible defense to plaintiff's FTCA claim where court had previously ruled that government's conduct violated plaintiff's clearly established constitutional due process rights); Glickman v. United States, 626 F.Supp. 171, 175 (S.D.N.Y.1985) (denying Government's motion to dismiss under § 2680(a) where plaintiff based common law tort claim on allegation that government had tested experimental drugs on American citizens without their knowledge; court held that such conduct "goes beyond the constitutional powers of the Government, and seriously violates the constitutional rights of a citizen" and therefore does not fall within discretionary function exception); but see Kiiskila v. United States, 466 F.2d 626, 627-28 (7th Cir.1972) (upholding district court's dismissal of case for lack of jurisdiction and holding that challenged conduct, although "constitutionally repugnant," fell within discretionary function exception).

C. The two-pronged discretionary function inquiry
Although we have already determined that we must deny defendant's motion, in the interest of judicial economy and to clarify the issues that remain to be determined, we will address plaintiffs' final argument: that even if the inspectors' conduct was not unconstitutional, it still cannot be considered discretionary because it does not satisfy the two-pronged inquiry that defines discretionary conduct. As noted above, the discretionary function applies where: 1) the conduct at issue is a matter of choice for the acting employee and 2) that permissible choice is "based on considerations of public policy." Accordingly, we must examine the nature of the responsibilities of the Customs Inspectors whose conduct is challenged here.
Title 19 U.S.C. § 1582 provides that "all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents." Similarly, 19 C.F.R. § 162.7 provides that: "A Customs officer may stop, search, and examine any ... person." Finally, 19 C.F.R. § 162.6 states that "All persons, baggage, and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection and search by a Customs officer ... if such action is deemed necessary or appropriate."
We find that the statute and its accompanying regulations indicate that there is "room for choice" on the part of an individual Customs inspector determining whether and to what extent to detain or search an individual entering the country. For instance, the statute states that Customs agents "may" search passengers, but it does not obligate them to search each passenger. See Attallah, 955 F.2d at 784. Instead, the statutory and regulatory scheme clearly contemplates that Customs agents will be permitted to discriminate among passengers in determining whom to detain and/or search. It provides no criteria which must be considered in making this determination, nor does it forbid Customs agents from relying upon certain criteria. Similarly, it does not indicate which types of searches or what periods of detention are appropriate or inappropriate in given situations. In sum, the statutory and regulatory scheme requires a case-by-case determination of whether and how to stop, search, and examine incoming passengers and vests the individual officer with broad latitude in all aspects of this determination. See Attallah, 955 F.2d at 784 ("The words `may stop search and examine,' and `are liable to inspection,' indicate to us that there is room for choice on the part of Customs agents when carrying out their duties."); DePass v. United States, 479 F.Supp. 373, 377 (D.Md.1979) (distinguishing between cases where "an official must mechanically follow set, defined guidelines" and cases where "an official has *477 broad discretion and few constraints in his decisionmaking") (citations omitted).
Even plaintiffs do not seriously contest that the decision to search or detain a given passenger or the decision to subject a passenger to a particular type of search or period of detention is a matter of choice for the individual agents involved. Accordingly, we find that the first prong of the discretionary function inquiry is met.
We also find that Customs inspectors exercise policy choice when deciding whom to detain and search and what types of detention and search are appropriate. We agree with the First Circuit that
[t]he decision an agent makes is of great importance in fulfilling the mandate of the Customs Service  to protect the integrity of our national borders. It is imperative that a Customs agents feel at liberty to exercise his/her discretion to search, or not, any passenger, without fearing legal repercussions. For these same reasons, standards for searches and seizures by Customs agents at the border ... are less stringent than at any other places in our nation.
Attallah, 955 F.2d at 784 (citations omitted); cf. DePass, 479 F.Supp. at 377 ("Despite the ad hoc nature of the inspector's decision, each time an immigration inspector examines someone to determine whether he is a U.S. citizen, the inspector is in effect setting a policy that affects our international relations and which has social, economic, and political repercussions in this country as well."); Horta v. Sullivan, 4 F.3d 2, 21 (1st Cir.1993) ("Generally, although law enforcement agents have a mandatory duty to enforce the law, decisions as to how best to enforce that duty are protected by the discretionary function exception.") (citing cases).
Furthermore, the Supreme Court has indicated that "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." United States v. Gaubert, 499 U.S. at 324, 111 S.Ct. at 1274. The burden is on plaintiff to show "that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." 499 U.S. at 324-25 & n. 7, 111 S.Ct. at 1274-75 & n. 7 (stating, as an example, that the discretionary function would not apply to a bank regulator's negligent driving while on an official mission because although driving involves the constant exercise of discretion, the bank regulator's decisions in exercising that discretion can hardly be said to be grounded in regulatory banking policy). Here, plaintiffs have failed to present any evidence which could overcome the presumption that the challenged conduct was grounded in the policy of protecting the integrity of our borders.[11] Accordingly, we hold that, provided the conduct of the Customs inspectors was within constitutional bounds, both prongs of the discretionary function exception inquiry are satisfied. The Customs inspectors' decision as to whether and to what extent they would detain and search plaintiffs is a discretionary function within the meaning of the FTCA.

IV. CONCLUSION
Defendant has moved for judgment on the ground that the court lacks subject matter jurisdiction because this action falls within the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). Because plaintiffs may yet prove that the Customs inspectors' detention and search of them was unconstitutional, and therefore not shielded by the discretionary function exception, we must deny defendant's motion at this time.
The conduct alleged in the Complaint is indeed of a most serious nature. Even the defendant United States has acknowledged *478 in its brief that "plaintiffs suffered a thoroughly unpleasant and intrusive examination by Customs at the Newark International Airport on the evening of February 3, 1994, and that it is regrettable when any citizen suffers such indignities." Despite the gravity of the allegations, however, should plaintiffs fail at the hearing to meet their burden of proving a constitutional violation, this court will have no choice but to dismiss this matter for lack of subject matter jurisdiction. The issue to be determined in our hearing on jurisdiction will be whether or not the Customs inspectors' decisions to detain and search plaintiffs were made on a constitutional basis or an unconstitutional basis. Prior to the hearing, the parties shall brief the issue, left open in Montoya, of what level of suspicion is constitutionally required to justify the types of searches at issue in this case.

ORDER
AND NOW, this 18th day of August, 1995, after full consideration of Defendant's Motion for Judgment, filed on June 21, 1995, Plaintiffs' Brief in Opposition, filed on July 10, 1995, Defendant's Reply Brief, filed on July 12, 1995, and Plaintiffs' Letter to the Court dated July 17, 1995, it is hereby ORDERED that Defendant's Motion is DENIED at this time without prejudice until a hearing can be held consistent with the foregoing opinion.
NOTES
[1] Defendant has presented its motion as one for either judgment on the pleadings or for summary judgment. We note that: discovery is now closed; both parties have submitted materials outside the pleadings; and plaintiffs, the non-movants, have not indicated to the court in any way that they require further discovery in order to respond to defendant's motion. We believe that even when disputed issues of fact exist, the proper vehicle for raising subject matter jurisdiction is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). Unlike motions under 12(b)(6), when considering a 12(b)(1) motion the court is free to determine disputed issues of fact. Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884 (3d Cir.1977); see also Martinez v. United States Post Office, 875 F.Supp. 1067, 1071 (D.N.J. 1995).

Accordingly, we will treat defendant's motion as a 12(b)(1) motion.
[2] See, e.g., Sutton v. United States, 819 F.2d 1289, 1297 (5th Cir.1987) ("[I]f actions under the proviso must also clear the hurdle of the discretionary function exception ... the law enforcement proviso would fail to create the effective legal remedy intended by Congress."); Caban v. United States, 671 F.2d 1230, 1234-35 (2d Cir.1982) ("We do not think ... that either section should be read to eviscerate the other. If we classify as discretionary the ... [challenged conduct], we will jeopardize a primary purpose for enacting § 2680(h).") (citation omitted); Beran v. United States, 759 F.Supp. 886, 892 (D.D.C.1991) (noting that although it appeared illogical to hold that police work is never discretionary, to hold otherwise "would require this court functionally to read § 2680(a) out of the FTCA").
[3] In Pooler, the Third Circuit held that § 2680(h) does not waive the government's sovereign immunity in all cases involving the commission of one of the enumerated intentional torts by an investigative or law enforcement officer. Instead, § 2680(h) waives the government's sovereign immunity only in those cases in which an officer commits one of the enumerated intentional torts "while executing a search, seizing evidence, or making an arrest." Id. at 872. The Pooler plaintiffs had not charged the defendant with committing an intentional tort "while executing a search, seizing evidence, or making an arrest." Id. Rather, they had based their claim on the defendant's choice of investigative methods and his decision to file charges against them. Id. at 870. Accordingly, the Third Circuit held that the claim was not actionable under § 2680(h). Id. at 872. Because it held that plaintiffs had failed to state a claim actionable under the intentional tort proviso, the court never reached the question of whether such a claim would have to "clear the discretionary function exception" before it could be maintained against the United States pursuant to the FTCA. Id.

The Pooler court did comment that its holding "largely eliminat[ed] the likelihood of any overlap between section 2680(a) and section 2680(h)" since the activities of officers in engaging in searches, seizures or arrests were most often "operational," and therefore did not fall within the discretionary function exception. Id. The Supreme Court, however, has since rejected the "planning/operational" distinction as a means of determining whether conduct is discretionary. See United States v. Gaubert, 499 U.S. 315, 325-26, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335 (1991). Thus, Pooler lends no support to plaintiffs' argument that claims brought pursuant to § 2680(h) and based upon illegal searches and arrests are not subject to the discretionary function exception.
[4] See also Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958 (discretionary function exception does not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow); Pooler v. United States, 787 F.2d at 871 (noting that federal officials do not possess discretion to commit violations of constitutional rights or federal statutes); Koch v. United States, 814 F.Supp. 1221, 1228 (M.D.Pa. 1993) (noting that "[t]he [discretionary function] exception does not apply if the conduct in question violated the United States Constitution").
[5] Judge Bork once explained the rationale behind this rule as follows:

[A] decision cannot be shielded from liability if the decisionmaker is acting without actual authority. A government official has no discretion to violate the binding laws, regulations or policies that define the extent of his official powers. An employee of the government acting beyond his authority is not exercising the sort of discretion the discretionary function was enacted to protect.
Red Lake Band of Chippewa Indians v. United States, 800 F.2d 1187, 1196 (D.C.Cir.1986) (discretionary function exception did not apply to conduct of FBI agent which was without legal authority and contrary to established FBI policy); see also Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958 (an employee has no rightful option but to adhere to the directives of federal statute, regulation or policy).
[6] See Sutton v. United States, 819 F.2d at 1301 (Jones, J., concurring) (citing the rule that violations of agency regulations do not fall within the discretionary function exception so as to immunize the federal government from liability, and, based on that rule, questioning the majority's conclusion that if the discretionary function exception applied to cases brought under § 2680(h) even cases like Bivens and the Collinsville raids would not be actionable).
[7] Because we hold that the discretionary function exception applies even to cases brought pursuant to the intentional tort proviso, we need not reach the issues of whether all the torts alleged here fall within that proviso and whether Customs inspectors are "law enforcement officers" as defined in the proviso. Resolution of these issues in plaintiffs' favor would not excuse them from compliance with the discretionary function exception.
[8] As we have already discussed, the court has a duty to determine issues of jurisdiction. This is not a mere facial attack on the complaint, and applicable Third Circuit law compels us to reject the notion that we are bound by the allegations of the complaint as implied in McElroy v. United States, 861 F.Supp. 585, 593-94 (W.D.Tex.1994).
[9] If this matter does proceed to trial, there is no right to a jury trial in a case brought pursuant to § 1346(b) of the FTCA. See 28 U.S.C. § 2402. However, in its discretion a court may empanel an advisory jury to assist it in resolving disputed issues of fact. See Schetter v. Housing Auth. of City of Erie, 132 F.Supp. 149 (W.D.Pa.1955).
[10] Because Internal Customs policy and the Customs training manual mirror the Montoya standard, we also cannot at this point preclude the possibility that the inspectors' conduct violated a federal policy.

Customs policy requires that before procedures such as x-rays or monitored bowel movements may be authorized, Customs officers must have a "reasonable suspicion" based on articulable facts and that such facts must be presented to a Customs supervisor for approval prior to the initiation of such searches. Paragraph A, "Procedures For Processing Internal Carriers" (Exhibit 1 to Government's Brief); Declaration of Susan T. Mitchell. Similarly, the Customs training manual (Exhibit 2 to Government's Brief) provides that "[d]etention of a traveler at the border, beyond the scope of a routine Customs search and inspection is justified if Customs officers, considering all the facts surrounding the traveler and the trip, reasonably suspect that the traveler is smuggling contraband in her alimentary canal."
As noted above, like conduct that violates constitutional standards, conduct that violates a federal statute, regulation or policy cannot be discretionary. Thus, should plaintiffs succeed in proving that the Customs' agents acted without reasonable suspicion, the fact that such action was not only unconstitutional but also in violation of Customs policy and the training manual provides an additional basis for holding that the conduct is not discretionary.
[11] We note that to show, as plaintiffs have alleged, that the agents in question acted without "reasonable suspicion" and because of plaintiffs' race would most likely be sufficient to overcome this presumption. See Horta v. Sullivan, 4 F.3d at 19 (plaintiff can overcome presumption by showing that officer "acted for some ulterior purpose"). In this portion of our opinion, however, we address only the question of whether, in the event that plaintiffs fail to prove that the inspectors conduct was unconstitutional, that conduct would nevertheless still fall outside the discretionary function exception on the ground that it fails to satisfy the two-pronged inquiry.