Peter **JACKSON**

v.

**UNITED STATES of America.**

No. Y–98–3422.

United States District Court,
D. Maryland.

Dec. 22, 1999.

Marvin Ellin, Baltimore, MD, for plaintiff.

Lynne A. Battagila, United States Attorney, Baltimore, MD, Roann Nichols, Assistant United States Attorney, Baltimore, MD, for defendant.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

### I.

This case is before the Court on a Motion to Dismiss, or in the Alternative, for Summary Judgment filed by the Defendant, United States of America. On October 9, 1998, the Plaintiff, Peter Jackson, filed a complaint against the United States Customs Service ["Customs"], claiming civil rights violations pursuant to 42 U.S.C. § 1983. After the United States filed a Motion to Dismiss, or in the Alternative for Summary Judgment on September 30, 1999, Jackson moved to amend his complaint, naming the United States as defendant and restyling his claim as a cause of action pursuant to the Federal Tort Claims Act ["FTCA"]. The Court granted Jackson's Motion for Leave to Amend on November 3, 1999, and asked the parties to supplement their pleadings by addressing the interplay between the FTCA's "law enforcement proviso" and the "discretionary function exception." Both Jackson and the United States submitted supplemental memoranda in December 1999, and the United States renewed its Motion.

### II. Factual Background

Peter Jackson arrived at Baltimore–Washington International ["BWI"] Airport on September 25, 1997, at approximately 9:10 p.m. Jackson is a citizen of Jamaica and was traveling on Air Jamaica. He cleared immigration, but Customs officers referred him to the proper service for secondary examination. Apparently, Jackson had not listed a destination on his customs declaration, and a Customs computer program indicated that he had made numerous trips to Miami and New York, both known centers for narcotics activity.

During the secondary examination, Customs officers noted a number of factors that raised their suspicion about Jackson: (a) he was wearing loose, bulky clothing; (b) he was visibly nervous; (c) he had purchased a cash ticket three days before and had booked a return flight to Jamaica for October 10, 1997; (d) he had a Florida driver's license and a Florida identification card listing a Miami address; (e) he stated that he was unemployed and had no steady income; (f) the purpose of his trip was pleasure; (g) although he had only $46 cash and no credit cards or ATM cards, he told the Customs agents that he would stay at an airport hotel; and (h) he had never been to Baltimore and had no contacts in the area.

Jackson also told the agents that he planned to visit local radio stations to promote his songs. According to the Customs officers, he had only one cassette tape in

his possession and was unable to produce the names or phone numbers of any radio stations. He told them that "people from Newark" representing a company known as "Peter Pan" would meet him and discuss business. He also claimed that he was supposed to page someone named "Mikey Mike" using an 800 number upon arrival at BWI. Jackson produced a phone number that he said was his record company contact in New Jersey, but the Customs officers determined that the three-digit prefix was assigned to Boston, Massachusetts.

While searching Jackson's luggage, the Customs officers noted that he carried very little clothing for a two-week stay. They also found a bottle of pills, which Jackson stated were to "flush his system." A test of the pills for narcotics was negative. The Customs officers then subjected Jackson to a "pat down" search, which was also negative. The officers claim, however, that Jackson's bulky clothing made the search difficult.

The officers then strip-searched Jackson and examined his clothing for contraband. Again, the results were negative. At this point, the Customs officers suspected that Jackson was an internal narcotics courier and requested permission to transport him for an x-ray examination. After initially refusing, Jackson signed the x-ray consent form. Jackson was handcuffed and transported to North Arundel Hospital. When the x-ray results came back negative, the officers returned Jackson to BWI at approximately 1:45 a.m. on September 26, 1997.

Jackson has provided evidence indicating that he is a music performer with the show-business name of "Galaxy P." He has released several music albums and was traveling to the United States to meet with business contacts who would help him promote his records. Jackson claims that he had promotional material in his possession at the time of the search that would have established his identity as a performer and furnished clear evidence of why he was in the United States. According to Jackson, the Customs officers had no reasonable suspicion to arrest or search him because they failed to identify this evidence or to call his contacts. He also alleges that the officers ridiculed him and threatened to shoot him if he tried to escape. The officers' actions, says Jackson, pushed him to the point of emotional and physical collapse, humiliated him, and caused him to cry out in pain.

## III. Discussion

### A. The Federal Tort Claims Act and Subject Matter Jurisdiction

The FTCA provides federal jurisdiction only to the extent that the United States waives its sovereign immunity. See 28 U.S.C. §§ 1346(b), 2674. A critical question in any FTCA action, therefore, is whether the Court has jurisdiction to hear the case. Here, the Government has challenged the Court's subject matter jurisdiction under Federal Rule 12(b)(1). When the Court's subject matter jurisdiction is challenged, the plaintiff bears the burden of persuasion because the party suing the United States must demonstrate an unequivocal waiver of sovereign immunity. See Williams v. United States, 50 F.3d 299, 304 (4th Cir.1995). In ruling on the 12(b)(1) motion, the Court may consider exhibits outside the pleadings and weigh the evidence to satisfy itself of its power to hear the case. See id.

The FTCA grants jurisdiction to the federal courts via a limited waiver of sovereign immunity. See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 807–08, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Under the Act, the United States will be liable for acts or omissions of its agents that are tortious under the law of the place where the act or omission occurred. See 28 U.S.C. §§ 1346(b), 2674; Norton v. United States, 581 F.2d 390, 394 (4th Cir. 1978).

This liability, however, is limited in various ways, two of which are relevant in this case. First, the United States re-

tains its immunity for torts involving a "discretionary function or duty" of the Government, regardless of whether or not discretion was abused. 28 U.S.C. § 2680(a). Second, the United States is immune from certain intentional torts committed by its agents. 28 U.S.C. § 2680(h). This latter exception is subject to a proviso allowing suits for claims arising "out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution[,]" when the claims involve "acts or omissions of investigative or law enforcement officers of the United States Government." *Id.* If either the "discretionary function" or "intentional tort" exception applies, the waiver of sovereign immunity is limited and the federal court will lack jurisdiction to hear the case. *See Williams*, 50 F.3d at 304–05.

Jackson has alleged "negligent and intentional acts" by the customs officers who searched and detained him. Although his claims of negligence are not clear,[1] Jackson's complaint, fairly read, alleges the intentional torts of false arrest, assault, battery, and intentional infliction of emotional distress.

### B. *False Arrest*

Jackson alleges that his detention by the customs officers was a false arrest. Because he claims an intentional tort by federal law enforcement officers,[2] the law enforcement proviso is implicated. However, the United States argues that the officers were acting within a realm of discretion protected by 28 U.S.C. § 2680(a). The question before the Court, therefore, is whether Jackson must first overcome the discretionary function exception before the United States' tort liability under the law enforcement proviso is triggered. For the reasons that follow, the Court holds that he must.

1. Because Jackson has failed to explain how the Customs officers' actions were negligent, as opposed to intentional, this claim will be dismissed.

2. The United States does not dispute that the Customs officers qualify as "law enforcement

The interplay between the law enforcement proviso and the discretionary function exception has been addressed by numerous courts in recent years. *See* Kurtis A. Kemper, Annotation, Construction and Application of Federal Tort Claims Act Provision Excepting from Coverage Claims Arising out of False Imprisonment, False Arrest, Malicious Prosecution, or Abuse of Process, 152 A.L.R.Fed. 605 § 17 (1999). One circuit court has held that plaintiffs need not overcome the discretionary function exception of § 2680(a) to implicate the Government's liability under § 2680(h). *See Sutton v. United States*, 819 F.2d 1289 (5th Cir.1987). The *Sutton* court and others have raised the concern that employing the discretionary function "hurdle" in cases of intentional torts would practically eviscerate the remedy provided by the law enforcement proviso. *See id.* at 1295; *Beran v. United States*, 759 F.Supp. 886, 892 (D.D.C.1991). In contrast, the majority of courts addressing the question have held that a plaintiff must clear the discretionary function "hurdle" before bringing an intentional tort claim pursuant to the law enforcement proviso. *See Gasho v. United States*, 39 F.3d 1420 (9th Cir.1994); *Gray v. Bell*, 712 F.2d 490 (D.C.Cir.1983); *Garcia v. United States*, 896 F.Supp. 467 (E.D.Pa.1995); *Biase v. Kaplan*, 852 F.Supp. 268, 282 (D.N.J.1994); *Crow v. United States*, 634 F.Supp. 1085 (D.Kan.1986); *see also Pooler v. United States*, 787 F.2d 868 (3d Cir.1986). Although these courts noted the conflict between the two provisions, they decided that canons of statutory construction, essential considerations of policy, and the common law roots of governmental immunity compelled the conclusion that the discretionary function exception applies to intentional tort claims based on the acts of law enforcement officers.

officers" for the purposes of the FTCA. A "law enforcement officer" means any officer of the United States who is empowered to conduct searches, seize evidence, or make arrests for violations of federal law. 28 U.S.C. § 2680(h).

■ The Court holds that a FTCA plaintiff must first overcome the discretionary function "hurdle" before the Court will consider intentional tort claims under § 2680(h). In reaching this decision, the Court abides by the canon that statutes waving the sovereign immunity of the United States must be "construed strictly in favor of the sovereign." *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951). The Court also agrees with *Garcia* that "application of the discretionary function exception to cases brought pursuant to the intentional tort proviso [does not threaten] to eviscerate the remedy Congress sought to create when it enacted the proviso." *Garcia*, 896 F.Supp. at 473. The discretionary function exception does not immunize from suit any conduct that violates the Constitution, a statute, or applicable regulations. *See id.* There is also a realm of non-discretionary law enforcement activity that, if tortious, would fall outside of § 2680(a). *See id.*

■ Applying the discretionary function "hurdle" to Jackson's claims, it is clear that the Customs officers were performing discretionary duties during the alleged false arrest. The Supreme Court has noted that the goal of the discretionary function exception is to prevent "judicial second-guessing" of administrative decisions grounded in social and political policy. *See United States v. Gaubert*, 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Federal courts employ a two-part test to determine whether acts are covered by the exception. First, the act must be discretionary in nature and involve the element of judgment or choice. *Id.* at 322, 111 S.Ct. at 1273. Second, the act must implicate considerations of public policy. *Id.* at 322–23, 111 S.Ct. at 1273–74.

The relevant statutes and regulations give customs officers a great deal of latitude and require a broad range of choice as they decide whether to detain or search individuals who enter the United States. *See Garcia*, 896 F.Supp. at 476. Congress granted the Treasury Department broad authority to detain and search persons coming to the United States from foreign countries, *see* 19 U.S.C. § 1582, and the Department's regulations provide broad discretion for searches and inspections by Customs officers, *see* 19 C.F.R. § 162.6. Officers must determine which passengers will be searched, but the regulations provide no specific criteria. *See Garcia*, 896 F.Supp. at 476. The statute and regulations authorize officers to detain and search certain passengers, but provide no details as to what types of searches and detentions are appropriate. *See id.* In short, decisions to search and detain foreign visitors implicitly involve great degrees of judgment and choice. Courts should not subject customs officers to "unrealistic second-guessing" as they perform the critical function of protecting our nation's borders. *See Garcia v. United States*, 913 F.Supp. 905, 914 (E.D.Pa.1996) (citing *United States v. Montoya de Hernandez*, 473 U.S. 531, 542, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985)). As such, these decisions fulfill the first part of the "discretionary function" test. *See Attallah v. United States*, 955 F.2d 776, 784 (1st Cir. 1992); *Mokwue v. United States*, 884 F.Supp. 228, 231 (N.D.Tex.1995).

■ The officers' actions also meet the second part of the test. When a statute or regulation allows a government agent to act with discretion, there is a "strong presumption" that the authorized act is based on underlying policy. *See Gaubert*, 499 U.S. at 324, 111 S.Ct. at 1274; *Bernaldes v. United States*, 81 F.3d 428, 429 (4th Cir.1996). As noted, the relevant statute and regulations provide Customs officials with broad discretion to detain and search foreign visitors. The search and detention activities involved in this case, therefore, are presumed to be grounded in the policy underlying border searches. Border searches, in turn, clearly implicate broad questions of social, economic, and political policy, particularly in light of the vexing problem of drug smuggling. *See Garcia*, 913 F.Supp. at 914; *Mokwue*, 884 F.Supp. at 231. Jackson's false arrest claim, there-

fore, falls within the FTCA's discretionary function exception, and the Court lacks jurisdiction to hear it.

Jackson argues that the officers' actions were "not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *See Gaubert*, at 324–25 & n. 7, 111 S.Ct. at 1274–75 & n. 7. The Court disagrees. Although Jackson is correct in stating that the Customs Service does not make a policy of "recklessly disregarding" exculpatory evidence, it does not follow that the occasional mistaken search and detention is somehow contrary to the regulatory regime as a whole. Provided that Customs agents act within constitutional and legal bounds, mistakes are merely a regrettable, but inevitable, component of the border protection and narcotics interdiction regime.

### B. *Assault, Battery and Infliction of Emotional Distress*

Although the Court has determined that the Customs officers were performing discretionary functions at the time of the alleged false arrest, it is not possible to determine for the purposes of the United States' 12(b)(1) motion whether the alleged assault and intentional infliction of emotional distress also arose from discretionary acts. The issue, however, may properly be resolved on the United States' Motion for Summary Judgment because the United States is entitled to judgment as a matter of law.[3]

 The FTCA provides that the United States shall be liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The United States is also entitled to all defenses available to its agents. *See Norton v. United States*, 581 F.2d 390 (4th Cir.1978); *Goehring v. United States*, 870 F.Supp. 106, 108 n. 2 (D.Md.1994). Under Maryland law, a law enforcement officer is not liable for assault and battery or other tortious

conduct performed during the course of his official duties unless he acted with "actual malice," i.e., ill will or evil purpose, towards the plaintiff. *Goehring*, 870 F.Supp. at 108. Because Jackson has failed to allege actual malice or provide any evidence to support an inference of malice, his claims must fail. *Cf. Gasho v. United States*, 39 F.3d 1420, 1434 (9th Cir.1994).

 Moreover, with regard to the claim of intentional infliction of emotional distress, Jackson has failed to allege or provide evidence of the requisite degree of distress. To establish such a claim, the plaintiff must show the "truly devastating effect" of the defendant's conduct by proving an emotional response "so acute that no reasonable person could be expected to endure it" and would be unable to function or attend to necessary matters. *See Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 161, 502 A.2d 1101, 1115 (1986). Jackson's unsubstantiated allegation that he suffers "emotional trauma" is simply insufficient. The Court finds, therefore, that Jackson has failed to establish the essential elements of these additional tort claims.

### IV. Conclusion

Based on the foregoing analysis, the Court will grant the United States' motion. Jackson's false arrest claims will be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1), and his other intentional tort claims will be dismissed on summary judgment pursuant to Federal Rule 56.

1. That Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment BE, and the same IS, hereby GRANTED; and

2. That JUDGMENT BE ENTERED in favor of the United States on Plaintiff's claims of assault, battery, and intentional infliction of emotional distress; and

---

**3.** Although the Court does not address the issue here, the Customs officers are entitled to assert qualified immunity on Jackson's FTCA

claims. *See Norton v. United States*, 581 F.2d 390 (4th Cir.1978).

3. That copies of this Memorandum and Order be mailed to counsel for the parties.